**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

COREY E. JOHNSON,

      Plaintiff,

v.                                                              Case No.  7:20cv582

(K-9) OFFICER MCCOWAN, *et al.*,

      Defendants.

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

Defendants Jeffrey Kiser, K-9 Sergeant J. Stanley, Harold W. Clarke, A. David

Robinson, Major William J. Barbetto, and Virginia Department of Corrections ("VDOC"), by

counsel, submit the following in support of their Motion to Dismiss.

**PRELIMINARY STATEMENT**

Plaintiff Corey E. Johnson, #1061522, an inmate in the custody of VDOC who at all

relevant times was housed at Red Onion State Prison ("ROSP"), asserts claims under 42 U.S.C.

§ 1983 and Virginia tort law, arising from the use of force by a VDOC canine officer. Johnson

originally brought this action *pro se* and then filed an Amended Complaint, ECF No. 19, after he

retained counsel. The Amended Complaint asserts the following claims:

| | |
|---|---|
| Count I: | An Eighth Amendment claim for excessive force against Defendant K-9 Officer McCowan. Am. Compl. ¶¶ 84–89. |
| Count II: | An Eighth Amendment claim for deliberate indifference against Defendants K-9 Officer E. Baker, C/O S. Dean, C/O P. Carroll, and an unnamed correctional officer identified in the Amended Complaint as John Doe 4.[1] Am. Compl. ¶¶ 90–99. |

---

[1] Officers Baker, Dean, and Carroll are identified in the Amended Complaint as John Does 1, 2, and 3, respectively.
The Office of the Attorney General of Virginia has declined to accept service on behalf of John Doe 4 because it did

Count III:     An Eighth Amendment claim for bystander liability against Defendants Baker, Dean, Carroll, and John Doe 4. Am. Compl. ¶¶ 100–03.

Count IV:      An Eighth Amendment claim for failure to train, supervise, or discipline against Defendants Kiser, Stanley, Clarke, Robinson, and Barbetto. Am. Compl. ¶¶ 104–21.

Count V:       An Eighth Amendment claim against Defendants Clarke, Robinson, Barbetto, and VDOC. Am. Compl. ¶¶ 122–32.

Count VI:      Claims under Virginia law for assault, battery, and intentional infliction of emotional distress against Defendant McCowan. Am. Compl. ¶¶ 133–37.

Count VII:     A claim under Virginia law for negligence against Defendants Kiser, Stanley, and Barbetto. Am. Compl. ¶¶ 138–44.

Johnson seeks damages, declaratory relief, and an injunction against "VDOC policies that permit, condone, and ratify canine attacks on prisoners." Am. Compl. 32. He asserts his claims against all named individual Defendants in their individual capacities. *Id.* ¶¶ 9–18. He also names Defendants Clarke, Robinson, and Barbetto in their official capacities to the extent he seeks injunctive and declaratory relief. *Id.* ¶¶ 13–15.

Defendants Kiser, Stanley, Clarke, Robinson, Barbetto, and VDOC move to dismiss the claims asserted against them and summarize their arguments as follows. First, all claims against VDOC should be dismissed because it is protected by Eleventh Amendment immunity and is not susceptible to suit under § 1983. Second, Johnson's claim for injunctive relief must be dismissed because he lacks standing to seek such relief and because his requested injunction is overbroad, in violation of the Prisoner Litigation Reform Act ("PLRA"). Third, with respect to Counts IV and V, Johnson does not plead facts showing that the Defendants have failed to supervise their

---

not have sufficient information to identify this individual. Defendants McCowan, Baker, Dean, and Carroll answer the Amended Complaint separately and do not join in this Motion.

subordinates or have promulgated policies and practices in a manner that violates clearly established law; as such, they are entitled to qualified immunity. Finally, as to Claim VII, the Defendants are protected by state sovereign immunity with respect to the exercise of their discretionary duties; furthermore, Johnson does not state a viable claim for relief, as negligent supervision is not actionable under Virginia law. Accordingly, Defendants respectfully request dismissal of all claims asserted against them in the Amended Complaint.

## MATERIAL FACTUAL ALLEGATIONS

For purposes of a motion to dismiss, the Court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Defendants do not admit that the facts within the Amended Complaint are as Johnson alleges them to be, but accept his version of the facts for purposes of the motion to dismiss.

### Allegations Regarding the Incident of May 2, 2020

Johnson alleges that on May 2, 2020, he got into a fistfight with another inmate. Am. Compl. ¶ 32. Johnson and the other inmate stopped fighting after Johnson was struck with gas canisters shot from the control booth, and canine officers arrived shortly afterward. *Id.* ¶¶ 31–34. When Johnson observed that the canine unit had arrived, he lay facedown on the ground and extended his arms outward, shortly before Defendant McCowan gave orders for him to do so. *Id.* ¶¶ 35–37. McCowan then commanded his canine to engage Johnson. *Id.* ¶ 38. The canine bit Johnson's right wrist and arm and dragged him across the floor. *Id.* ¶¶ 39, 41. Johnson alleges that although he was compliant and did not struggle or stand up during the encounter, McCowan allowed the dog to engage for ten to thirteen seconds before releasing. *Id.* ¶¶ 40, 43. He also

alleges that Defendants Baker, Dean, Carroll, and John Doe 4, all of whom were present in the pod during this incident, failed to intervene and protect Johnson from further harm. *Id.* ¶¶ 58–65.

### Allegations Regarding VDOC Policies and Supervision of Canine Officers

The Amended Complaint points to several VDOC policies that apply to the use of canines in its facilities—specifically, Operating Procedure ("OP") 420.1, *Use of Force*; OP 420.2, *Use of Restraints and Management of Offender Behavior*; and OP 435.3, *Canines*. Am. Compl. ¶ 20 & n.1.[2] OP 420.1 provides generally that force is to be used "only as a last resort," limited to purposes of "self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control," and may not be used as punishment or for "vindictive or retaliatory purposes." *Id.* ¶¶ 21, 67. OP 420.2 states that measures to control prisoners "must be appropriately matched to the seriousness of the behaviors they are intended to control" and that "controls must not be applied any longer than is necessary to manage the targeted behavior." *Id.* ¶ 66.

OP 435.3 authorizes the use of canines to control inmates. Am. Compl. ¶ 20. The policy provides that whenever a bite incident occurs, a Canine Bite Report must be entered in the Dog Information Governance and Operation System ("DINGO"), and the prisoner's injuries photographed. *Id.* ¶ 68. Bite Reports are delivered to the Statewide Canine Program Coordinator, Shift Commander, Administrative Duty Officer, and Facility Unit Head. *Id.* The policy also requires that the Statewide Program Coordinator and Institutional Canine Sergeant be immediately notified of any bite incident. *Id.* Johnson states that Defendants Clarke, Robinson, and Barbetto are responsible for reviewing and approving these policies. *Id.* ¶¶ 128–30.

---

[2] As Johnson notes, these policies are not made available in full to inmates or to the public. Am. Compl. ¶ 20 n.1. Instead, the Amended Complaint cites to redacted versions that were provided to his counsel through Freedom of Information Act requests. *Id.*

Johnson alleges that canines are frequently misused to attack prisoners throughout VDOC, despite those prisoners often being compliant or in compromised positions. Am. Compl. ¶¶ 26–28. He also states on information and belief that McCowan, Baker, and other canine officers at ROSP have used excessive force against non-threatening prisoners at that facility. *Id.* ¶ 70. Kiser, Barbetto, and Stanley would have been made aware of these incidents after the officers submitted Bite Reports. *Id.* ¶¶ 70, 72. Johnson further alleges that Kiser, Barbetto, Stanley, Clarke, and Robinson failed to provide for appropriate training of canine officers and did not discipline McCowan or Baker following the events of May 2, 2020. *Id.* ¶¶ 73, 79.

## LEGAL STANDARDS

### I.    Motion to Dismiss

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556–57 (2007)). In making this evaluation, the court accepts all well-pled facts as true; however, it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet*, 591 F.3d at 255 (citing *Iqbal*, 556 U.S. at 678).

5

## II.      Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Courts evaluate a claim of qualified immunity under a two-part inquiry. The court must determine (1) whether the alleged facts show that the defendant's conduct violated a constitutional right, and (2) whether the right in question was clearly established at the time of the conduct at issue. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A finding that one of these two prongs has not been met obviates the need to consider the other; judges therefore have discretion as to which prong to address first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

With respect to the second prong, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The court should not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742).

<u>**ARGUMENT AND AUTHORITIES**</u>

I.  **VDOC is protected by sovereign immunity and is not susceptible to suit under § 1983.**

Sovereign immunity under the Eleventh Amendment "protects unwilling states from suit in federal court." *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013). This protection also extends to state agencies. *McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). Although Johnson does not specify what relief he seeks from VDOC, this is immaterial, as Eleventh Amendment immunity "applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Similarly, because VDOC is an arm of the state, it is not a "person" within the meaning of § 1983, and therefore may not be sued under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Accordingly, all claims against VDOC should be dismissed.[3]

II.  **Johnson lacks standing to seek prospective injunctive relief, and his request for an injunction is not narrowly tailored as required by the PLRA.**

Article III of the United States Constitution limits the power of federal courts to deciding "cases" and "controversies." A component of this limitation is the requirement of standing, which "ensures that a plaintiff has a personal stake in the outcome of a dispute and that judicial resolution of the dispute is appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 396 (4th Cir. 2011). "To meet the constitutional requirements for standing, a plaintiff must prove that: 1) he or she suffered an 'injury in fact' that is concrete and particularized, and is actual or imminent; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) the injury likely will be redressed by a favorable decision." *Id.*

---

[3] Because Defendants move for VDOC to be dismissed from this action in its entirety, it is not addressed as a party in the individualized claim discussions below.

These requirements of standing apply not only to claims for damages to redress past wrongs, but also to claims for injunctive relief. "[A] plaintiff's past injury does not necessarily confer standing upon him to enjoin the possibility of future injuries." *Bryant v. Cheney*, 924 F.2d 525, 529 (4th Cir. 1991). Instead, prospective relief "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

In *Lyons*, the plaintiff alleged that the defendants had subjected him to an illegal chokehold, which he claimed was a routine practice of the Los Angeles Police Department, and he sought permanent and preliminary injunctions barring the further use of this tactic. 461 U.S. at 97–98. The Supreme Court held that the plaintiff had not demonstrated a case or controversy sufficient to justify equitable relief. *Id.* at 105. The Court noted that although the plaintiff's allegation of past injury accorded him standing to seek damages, he had not alleged a likelihood of future injury, as was necessary to confer standing to seek an injunction. *Id.*

Specifically, the Court observed that the plaintiff had not alleged facts establishing that there was a real and immediate threat that he would again be stopped by police, or that such an encounter would necessarily result in him being put in a chokehold. *Id.* at 105–06. The Court noted that "[a]bsent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any and all citizens who no more than assert that certain practices of law enforcement are unconstitutional." *Id.* at 111. Based on this reasoning, the Court held that the plaintiff lacked standing to seek an injunction and that his claim for equitable relief should have been dismissed. *Id.* at 101, 113.

8

Johnson's allegations are directly analogous to those at issue in *Lyons*. The Amended Complaint does not establish that, with respect to Johnson personally, the incident of May 2, 2020 was anything more than an isolated occurrence. Notwithstanding Johnson's claim that misuse of canines is widespread throughout VDOC,[4] the allegations do not show either that he is imminently likely to again find himself in a situation (such as a fight) where canine officers are called to respond, or that canines would be used in an unconstitutional manner if such a situation did occur. Notably, Johnson does not allege that he was ever bitten by a VDOC canine, justifiably or not, prior to May 2, 2020. Because the Amended Complaint does not show that Johnson is likely to sustain future constitutional injury, he lacks standing to seek prospective relief.

In addition, Johnson's requested injunction is overbroad. In the Amended Complaint, Johnson requests that the Court "enjoin and estop the VDOC policies and practices that permit, condone, and ratify canine attacks on prisoners." This request does not comport with the PLRA. Under that statute, a federal court's power to order injunctive relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and an injunction cannot be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Johnson's request is not narrowly tailored to the alleged deprivation of his rights. He does not seek to limit the use of canines at ROSP specifically, but instead throughout all of VDOC. Moreover, he seeks not only to curtail the use of canines in a manner that violates the Eighth

---

[4] As Defendants further discuss in Part III below, Johnson's allegations that canines are used in a systemically unconstitutional manner throughout VDOC and at ROSP are conclusory and therefore not entitled to any weight.

Amendment, but requests that canines be banned entirely as a means for applying force. Because this request goes far beyond what could be considered necessary to remedy the injury he alleges to have sustained, Johnson's request for injunctive relief should be denied and dismissed.

### III.  Johnson fails to state a claim under § 1983 for failure to train, supervise, or discipline. (Count IV)

In Count IV, Johnson asserts a claim against Defendants Kiser, Stanley, Clarke, Robinson, and Barbetto for failing to train, supervise, or discipline their subordinates. It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Iqbal*, 556 U.S. at 676. "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

In order to prevail in a claim for supervisory liability, a plaintiff must show,

(1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable

risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan*, 737 F.3d at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Here, although Johnson claims that the Defendants failed to take remedial action in the face of widespread misconduct by canine officers, his allegations are far too vague to state a claim for supervisory liability. The Amended Complaint alleges that the use of excessive force by canine officers is "systemic" and "pervasive" throughout VDOC. Am. Compl. ¶¶ 21, 26–28. Johnson claims that inmates report being attacked by canines, and that this often occurs despite them complying with officers' instructions or being in a prone, defenseless position. *Id.* ¶ 26. With respect to the use of canines at ROSP specifically, Johnson simply alleges on information and belief that McCowan, Baker, and other officers "frequently engaged in excessive force" and "assault[ed] non-threatening prisoners with their attack canines." *Id.* ¶ 70.

Despite these sweeping allegations that officers in VDOC have engaged in the systemic use of excessive force, Johnson does not meaningfully identify any other specific incidents of unjustified canine attacks on prisoners, either at ROSP or throughout VDOC. Johnson contends that VDOC canine officers use excessive force "frequently," but his allegations include no statistics or other facts to establish *how* frequently this occurs. Moreover, Johnson's vague descriptions of reports by other prisoners do not suffice to show whether these reports were credible, such that the supervisory Defendants would be aware of widespread misconduct by their subordinates.

These allegations are insufficient to state a claim for supervisory liability. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 791. Even at the pleading stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Johnson's allegations of widespread excessive force by canine officers, without any specific facts offered in support, are conclusory, and as such they are not entitled to any weight. Consequently, his claim for supervisory liability should be dismissed.

Similarly, Johnson does not state a viable claim for failure to train. Liability under § 1983 for inadequate training of officers exists "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388. "Under a failure-to-train theory, as in other contexts, a supervisor must have been aware of a prior pattern of misconduct in order to have been deliberately indifferent to the risk of constitutional violations." *Cadmus v. Williamson*, No. 5:15cv45, 2016 U.S. Dist. LEXIS 11145, at *84 (W.D. Va. Feb. 1, 2016), *report and recommendation adopted in relevant part*, 2016 U.S. Dist. LEXIS 30628 (W.D. Va. Mar. 9, 2016). Johnson's conclusory allegations of misconduct by canine officers within VDOC prior to the May 2, 2020 incident fail to satisfy this standard.

In addition, Johnson does not allege "a direct causal link . . . between a specific deficiency in training and the particular violation alleged." *Buffington v. Baltimore Cty.*, 913 F.2d 113, 122 (4th Cir. 1990) (citing *Canton*, 489 U.S. at 391). Rather than identify any specific deficiencies in the training of VDOC's canine officers, Johnson broadly states that they are

trained in areas such as the permissible use of force, measures to provide for the safety of prisoners, and the obligation to intervene and protect prisoners from harm at the hands of other officers. Am. Compl. ¶¶ 114–18. These allegations do not establish that Defendants were deficient in their training of their subordinates or that Johnson's injury was caused by more than "an aberrational act by an individual officer." *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 875 (4th Cir. 1989). His claim for failure to train must therefore be dismissed.

Finally, Johnson's claim for failure to discipline is not actionable under § 1983. He appears to premise his claim on the Defendants' failure to take disciplinary action against McCowan or other bystanding officers following the events of May 2, 2020.[5] *See* Am. Compl. ¶¶ 73, 79. To the extent he asserts such a claim, this misstates the nature of supervisory liability. Because a supervisor's actions must have a causal relationship to the plaintiff's alleged injury, the failure to take disciplinary steps after the injury occurred is irrelevant. *See Danser v. Stansberry*, 772 F.3d 340, 350 (4th Cir. 2014) (noting that "the 'tacit authorization' theory focuses on information known to a supervisor *before* an incident occurs"). Thus, Johnson may not assert a claim for relief based on actions or omissions that occurred after he was already injured, and any claim for failure to discipline premised on these allegations must be dismissed.

Whether styled as failure to supervise, train, or discipline, the claims in Count IV are unsupported by any more than conclusory allegations of subordinate misconduct and supervisory lapses. Accordingly, Johnson has failed to plead facts showing that Defendants Kiser, Stanley, Clarke, Robinson, and Barbetto acted in violation of clearly established law. Those Defendants are therefore entitled to qualified immunity and dismissal of the claims asserted against them.

---

[5] To the extent Johnson asserts his claim based on a failure to discipline officers following other incidents of misconduct, he does not describe these incidents in any detail.

IV.    **Johnson's claim for unconstitutional policy or practice is not cognizable against the Defendants in their individual capacities and fails to state a claim for relief. (Count V)**

Count V, asserted against Defendants Clarke, Robinson, and Barbetto, does not specify the type of claim asserted (only that it is brought under § 1983 for violation of the Eighth Amendment), but appears to allege liability on the basis of unconstitutional practices and policies. As an initial matter, such a claim is not cognizable against these Defendants in their individual capacities. "[W]hether a public employer has adopted an unconstitutional 'custom' or 'policy' is a question to be asked when examining the basis for *municipal* liability under § 1983." *Mikkelsen v. DeWitt*, 141 F. App'x 88, 90–91 (4th Cir. 2005) (citing *Monell*, 436 U.S. at 690–91). "It is not the right question to ask when confronting a supervisor's potential liability in his individual capacity." *Id.* at 91 (citing *Randall v. Prince George's Cty.*, 302 F.3d 188, 206, 210 (4th Cir. 2002)). Johnson asserts claims for supervisory liability against Clarke, Robinson, and Barbetto in Count IV of the Amended Complaint, and it is under that framework that Johnson's individual-capacity claims against these Defendants should be considered.

Even assuming *arguendo* that these claims could be brought against the Defendants in their individual capacities, Johnson's allegations do not establish the existence of a policy or practice in violation of clearly established law. As noted above in Part III, Johnson alleges that Defendants have authorized a widespread practice throughout VDOC of canine officers using excessive force against inmates. However, aside from the incident of May 2, 2020, he does not provide any specifics regarding these purportedly unconstitutional uses of force. Johnson's conclusory allegations are not entitled to any weight, and accordingly he has not established the existence of an unconstitutional practice or custom permitting or encouraging the use of excessive force by canine officers.

Johnson's challenge to VDOC's written policies is also unavailing. The nature of this challenge is itself unclear—Johnson claims in Count V that VDOC's policies are deficient because they fail to:

> (a) ensure that canines are deployed in a manner consistent with VDOC Operating Procedure or other widely accepted guidance governing the use of patrol canines; (b) investigate improper deployment of canines; (c) discipline officers for their actions or failures to intervene in connection with incidents of brutality arising from the deployment of canines; (d) ensure that corrections officers are properly trained on the use of canines in VDOC facilities; and (e) ensure that canines and/or Canine Officers are sufficiently trained in accordance with VDOC Operating Procedure, Canine Training Academy criteria, or other widely accepted canine officer and canine training standards.

Am. Compl. ¶ 127.

In many respects, these arguments are circular and self-defeating. For instance, Johnson claims that VDOC's policies do not ensure compliance with other VDOC Operating Procedures and training standards, implying that these standards exist and act as adequate guidelines for officer conduct. Johnson also relies on these policies in support of his other claims, further suggesting that he disputes not the policies themselves, but the actions of individual officers that were purportedly in violation of those policies. *See* Am. Compl. ¶ 49 (alleging that Officer McCowan's use of his canine violated policy directives that force should be used as a last resort and that measures to control prisoners should be appropriate tailored to the targeted behavior); *id.* ¶ 69 (alleging that, under policy, Defendants would have received notice of dog bite incidents through the filing of a Canine Bite Report under OP 435.3).

Moreover, Johnson generally does not specify which provisions of VDOC's policies he deems to be deficient. The only specific provisions he challenges are language in the policies stating that force should be a "last resort" and "appropriately matched," which Johnson contends gives insufficient direction to officers. Am. Compl. ¶ 26. Johnson does not plausibly allege that

15

these provisions are the only guidance VDOC provides to its officers regarding the use of force, and in any case, such language is not improper simply because it is written broadly enough to allow officers some discretion in adapting to live circumstances. *Cf. Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998) ("In recognition that the prison environment is a dangerous one for correctional officers, prison administrators must be accorded 'wide-ranging deference' to design and implement policies and practices that in their judgment are necessary for the preservation of order and security." (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Simply put, Johnson does not point to any specific VDOC policy or procedure that could be construed as causing his injury.

More broadly, Johnson appears to contend that VDOC's policies and practices are unconstitutional because they allow for canines to be used *at all* as a means of applying force. *See* Am. Compl. ¶ 28 ("Given the pervasive nature of the use, and abuse, of the tactic in VDOC facilities, VDOC policies must be changed to prohibit the use of canines as a means of, or in any way connected to, attacking, restraining, or physically engaging with prisoners within VDOC facilities."); *id.* ¶ 126 (complaining that VDOC policies "permit officers to engage canines to bite or physically control prisoners in Virginia correctional institutions").

Johnson has pointed to no federal authority to clearly establish that a policy permitting canines to be used as a means of force is *per se* unconstitutional. To the contrary, courts have determined that canines can be a legitimate means of applying force in the prison setting. *See Whitten v. Gunter*, 757 F. App'x 234, 237–38 (4th Cir. 2018) (per curiam) (affirming judgment for defendant where plaintiff claimed that defendant released dog on him in violation of the Eighth Amendment); *cf. Raiford v. Clarke*, No. 7:15cv391, 2017 U.S. Dist. LEXIS 26425, at *12–13 (W.D. Va. Feb. 23, 2017) (dismissing, under 28 U.S.C. § 1915A, plaintiff's claim that

policy allowing patrol canines to be present in VDOC facilities created a hazardous condition in violation of the Eighth Amendment); *Peyton v. Clark*, No. 7:12cv481, 2014 U.S. Dist. LEXIS 129520, at *18 (W.D. Va. Aug. 19, 2014) (finding "no evidence in the record that the presence of trained dogs at WRSP or any other prison poses an unreasonable risk to the constitutional rights or physical well-being of compliant inmates or poses any risk greater than other legitimate tools of prison security, such as firearms, OC spray, or steel restraints"). Because Johnson does not establish that the challenged policies and practices are in violation of clearly established law, Defendants submit that they are entitled to qualified immunity and dismissal of Count V.

## V.   Johnson's claim for negligence must be dismissed because Defendants are entitled to sovereign immunity and because Virginia does not recognize a claim for negligent supervision. (Count VII)

Count VII asserts claims for ordinary negligence against Defendants Kiser, Stanley, and Barbetto, premised upon their supervision of canine officers. These Defendants are protected against these claims by sovereign immunity. Employees of the Commonwealth enjoy a qualified immunity from suit with respect to claims brought under state law. *James v. Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980). An employee is not entitled to immunity for intentional torts, *James*, 221 Va. at 52, 282 S.E.2d at 868, or for gross negligence, *Green v. Ingram*, 269 Va. 281, 290, 608 S.E.2d 917, 922 (2005). For acts of ordinary negligence, courts look to the following factors to determine whether an employee is entitled to immunity: "1. the nature of the function performed by the employee; 2. the extent of the state's interest and involvement in the function; 3. the degree of control and direction exercised by the state over the employee; and 4. whether the act complained of involved the use of judgment and discretion." *Messina v. Burden*, 228 Va. 301, 313, 321 S.E.2d 657, 663 (1984) (citing *James*, 221 Va. at 53, 267 S.E.2d at 113).

"With respect to the first two factors, 'if the function that a government employee was negligently performing was essential to a governmental objective and the government had a great interest and involvement in that function, those factors would weigh in favor of the employee's claim of sovereign immunity.'" *Pike v. Hagaman*, 292 Va. 209, 215–16, 787 S.E.2d 89, 92 (2016) (quoting *Lohr v. Larsen*, 246 Va. 81, 85, 431 S.E.2d 642, 644 (1993)). These two factors are clearly satisfied here, as the government has a strong interest in the secure operation of its correctional facilities. *Daniels v. Williams*, 720 F.2d 792, 797 (4th Cir. 1983); *cf. Dowdy v. Pamunkey Reg'l Jail Auth.*, No. 3:14cv3, 2014 U.S. Dist. LEXIS 67127, at *14 (E.D. Va. May 15, 2014) (acknowledging the government's interest in the operation of local jails).

Regarding the third factor, the numerous policies and regulations governing the operation of VDOC's prisons imply a high degree of state control over these employees. This factor thus weighs in favor of immunity. *Pike*, 292 Va. at 218, 787 S.E.2d at 94. The fourth element of discretion also supports Defendants' claim of immunity. *Id.* at 217, 787 S.E.2d at 93. Johnson describes the relevant job duties of Kiser, Stanley, and Barbetto as including the oversight of canine officers and investigation of potential incidents of misconduct. Am. Compl. ¶¶ 10–11, 15. These duties unquestionably involve the exercise of discretion. *See Hales v. City of Newport News*, No. 4:11cv28, 2011 U.S. Dist. LEXIS 112714, at *14 (Sept. 30, 2011) (finding that the defendants' "decisions regarding the training and supervision of subordinate police officers undeniably involve the exercise of their judgment and discretion"). Because all four factors weigh in favor of finding these Defendants to be protected by sovereign immunity, Johnson's claim for ordinary negligence should be dismissed.

Even if these Defendants were not immune, Johnson nonetheless fails to state a claim for relief against them. Johnson bases his claim on the Defendants' purported negligence in carrying

out their supervisory roles. However, Virginia does not recognize a claim for negligent supervision. *A.H. v. Church of God in Christ*, 297 Va. 604, 630, 831 S.E.2d 460, 475 (2019). Furthermore, Johnson's conclusory allegations of widespread misconduct by canine officers at ROSP and other VDOC facilities are insufficient to show the breach of a duty of care. Consequently, Johnson's negligence claim may also be dismissed on its merits.

### CONCLUSION

For the foregoing reasons, Defendants Kiser, Stanley, Clarke, Robinson, Barbetto, and VDOC respectfully request that the Court dismiss all claims asserted against them in the Amended Complaint.

Respectfully submitted,

JEFFREY KISER, K-9 SERGEANT J. STANLEY, VIRGINIA DEPARTMENT OF CORRECTIONS, HAROLD W. CLARKE, MAJOR WILLIAM J. BARBETTO, and A. DAVID ROBINSON

By: _____/s/ Timothy E. Davis_____
Timothy E. Davis, AAG, VSB#87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-4226
(804) 786-4239 (Fax)
Email:  tdavis@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Ian S. Hoffman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Email: ian.hoffman@aporter.com

John A. Freedman
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Email: john.freedman@aporter.com

Lauren Wulfe
Arnold & Porter Kaye Scholer LLP
777 South Figueroa Street, Suite 4400
Los Angeles, CA 90017
Email: lauren.wulfe@aporter.com

Shira Anderson
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Email: shira.anderson@aporter.com

Kelly Jo Popkin
Rights Behind Bars
416 Florida Avenue, Ste #26152
Washington, DC 20001
Email: kellyjo@rightsbehindbars.org
*Counsel for Plaintiff*

       /s/ Timothy E. Davis
Timothy E. Davis, AAG, VSB#87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219

(804) 225-4226
(804) 786-4239 (Fax)
Email:  tdavis@oag.state.va.us