**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

COREY E. JOHNSON,

        Plaintiff,

  v.

CANINE OFFICER MCCOWAN, *et al.*,

        Defendants.

Civil Action No. 7:20-cv-00582

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 8

FACTS PLED IN THE COMPLAINT .................................................................... 10

LEGAL STANDARD ............................................................................................... 12

ARGUMENT ............................................................................................................ 12

  A.  Mr. Johnson Has Pled a Viable § 1983 Claim Against the Supervising Defendants for Violation of His Clearly Established Eighth Amendment Rights .......................................... 13

    1.  Mr. Johnson has pled a violation of his constitutional rights by Defendants McCowan, Baker, Dean, and Carroll .................................................................................. 13

    2.  Mr. Johnson has adequately plead that the Supervising Defendants violated his constitutional rights ................................................................................................ 14

    3.  Mr. Johnson has pled violations of clearly established law ........................... 23

  B.  Mr. Johnson Has Proper Standing to Seek Prospective Injunctive Relief and His Request is the Only Adequate Remedy to Prevent Future Injury .......................................... 27

  C.  Mr. Johnson Has Viably Pled Negligence Under Virginia Law and the Supervising Defendants Are Not Entitled to Sovereign Immunity .............................................. 30

    1.  Supervising Defendants are not entitled to sovereign immunity .................. 31

    2.  Mr. Johnson has pled a viable negligence claim ......................................... 33

CONCLUSION .......................................................................................................... 36

US 169498902v14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. NaphCare*,
243 F. Supp. 3d 707 (2017) ...................................................31

*Adams v. NaphCare, Inc.*,
244 F. Supp. 3d 546 (E.D. Va. 2017) ...............................................32, 34

*Alicea v. Thomas*,
815 F.3d 283 (7th Cir. 2016) ...................................................25

*Amaechi v. West*,
237 F.3d 356 (4th Cir. 2001) ...................................................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................16

*Bowling v. Clarke*,
2020 WL 4340944 (W.D. Va. July 28, 2020).....................................9, 18

*Brown v. Mitchell*,
308 F. Supp. 2d 682 (E.D. Va. 2004) ...............................................20, 21

*Estate of Bryant v. Balt. Police Dep't*,
2020 WL 673571 (D. Md. Feb. 10, 2020) ...............................................21

*C.H. v. Church of God in Christ, Inc.*,
297 Va. 604, 831 S.E.2d 460 (2019)...................................................34

*Campbell v. City of Springboro, Ohio*,
700 F.3d 779 (6th Cir. 2012) ...................................................25, 26

*Canady v. Hodges*,
2020 WL 1258656 (W.D. Va. Mar. 16, 2020)..........................................9, 18, 25

*Caramillo v. Correct Care Solutions*,
2020 WL 4747786 (E.D. Va. Feb. 28, 2020)..........................................20

*Catellani v. City of Atlantic City*,
2017 WL 3112820 (D.N.J. July 21, 2017)...................................................22, 26

*Chapman v. City of Va. Beach*,
252 Va. 186, 475 S.E.2d 798 (1996)...................................................35

US 169498902v14

*Chesapeake & Potomac Tel. Co. of Va. v. Dowdy,*
235 Va. 55, 365 S.E.2d 751 (1988)..................................................34

*City of Canton v. Harris,*
489 U.S. 378 (1989).......................................................................20

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)..............................................................27, 28, 29

*Cnty. of Riverside v. McLaughlin,*
500 U.S. 44 (1991)........................................................................29

*Collin v. Rector & Bd. of Visitors of Univ. of Va.,*
873 F. Supp. 1008 (W.D. Va. 1995)...........................................16, 23

*DJ by & through Hughes v. Sch. Bd. of Henrico Cnty.,*
488 F. Supp. 3d 307 (E.D. Va. 2020) ............................................17

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir.1999) .........................................................33

*Elder v. Holland,*
208 Va. 15, 155 S.E.2d 369 (1967).................................................35

*Farmer v. Brennan,*
511 U.S. 825 (1994)......................................................................23

*Goodwyn v. Roop,*
2019 WL 3892428 (W.D. Va. Aug. 19, 2019) ...........................9, 17, 24

*Green v. Ingram,*
269 Va. 281, 608 S.E.2d 917 (2005)..........................................35, 36

*Hall v. Pruitt,*
2020 WL 4208070 (W.D.N.C. July 22, 2020)..................................16

*Hall v. Stouffer,*
2018 WL 8335491 (D. Md. Sept. 25, 2018) ...................................30

*Harris v. Elam,*
2019 WL 691791 (W.D. Va. Feb. 19, 2019) ...............................9, 18

*Harrison v. USPS,*
840 F.2d 1149 (4th Cir. 1988) .....................................................12

*Heider v. Clemons,*
241 Va. 143, 400 S.E.2d 190 (1991)..........................................31, 32

4

*Hernandez v. Lowe's Home Ctrs., Inc.*,
83 Va. Cir. 210 (2011) ...................................................................................34

*Hope v. Pelzer*,
536 U.S. 730 (2002) ................................................................................26, 27

*Houchens v. Rector & Visitors of the Univ. of Va.*,
23 Va. Cir. 202 (1991) ...................................................................................32

*Iko v. Shreve*,
535 F.3d 225 (4th Cir. 2008) ..........................................................................27

*Index Newspapers LLC v. U.S. Marshals Serv.*,
977 F.3d 817 (9th Cir. 2020) ..........................................................................28

*Jennings v. Hart*,
602 F. Supp. 2d 754 (W.D. Va. 2009) .............................................................33

*Jones v. Murphy*,
470 F. Supp. 2d 537 (D. Md. 2007) ...........................................................19, 20

*Kassen v. Hatley*,
887 S.W.2d 4 (Tex. 1994) ...............................................................................32

*King v. Blankenship*,
636 F.2d 70 (4th Cir. 1980) ......................................................................14, 24

*Kopf v. Wing*,
942 F.2d 265 (4th Cir. 1991) ..........................................................................25

*Kovari v. Brevard Extraditions, LLC*,
461 F. Supp. 3d 353 (W.D. Va. 2020) .............................................................21

*Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*,
72 F. Supp. 2d 560 (D. Md. 1999) .........................................................10, 28, 30

*Meyers v. Baltimore Cnty, Md.*,
713 F.3d 723 (4th Cir. 2013) ..........................................................................13

*Outdoor Amusement Bus. Assn., Inc. v. Dept. of Homeland Sec.*,
983 F.3d 671 (4th Cir. 2020) ...............................................................10, 28, 30

*Owens v. Baltimore City State's Att'ys Off.*,
767 F.3d 379 (4th Cir. 2014) ..........................................................................13

*Parker v. Wendy's Int'l, Inc.*,
41 F. Supp. 3d 487 (E.D. Va. 2014) ................................................................34

5

*Peyton v. Clark,*
    2014 WL 4657802 (W.D. Va. Sept. 16, 2014) .......................................9, 14, 18, 24

*Randall v. Prince George's Cnty., Md.,*
    302 F.3d 188 (4th Cir. 2002) ........................................................................14, 24

*Republican Party of N.C. v. Martin,*
    980 F.2d 943 (4th Cir. 1992) ................................................................................12

*Richmond, Fredericksburg & Potomac RR Co. v. Forst,*
    4 F.3d 244 (4th Cir. 1993) ...................................................................................12

*Ridpath v. Bd. Of Governors Marshall U.,*
    447 F.3d 292 (4th Cir. 2006) ..........................................................................23, 27

*Rose v. Officer Adams,*
    W.D. Va. Case No. 7:20-cv-00609, (filed Oct. 13, 2020) .....................9, 18, 33, 34

*Shaw v. Stroud,*
    13 F.3d 791 (4th Cir. 1994) ................................................................... *passim*

*Shreve v. Franklin County, Ohio,*
    2010 WL 5173162 (E.D. Ohio Dec. 14, 2010).........................................28, 29, 30

*Slakan v. Porter,*
    737 F.2d 368 (4th Cir.1984) ....................................................................15, 20, 23, 24

*Suhre v. Haywood Cnty.,*
    131 F.3d 1083 (4th Cir. 1997) ..............................................................................28

*Taylor v. Riojas,*
    141 S. Ct. 52 (2020)..............................................................................................26

*Thomas v. County of Los Angeles,*
    978 F.2d 504 (9th Cir. 1992) ..........................................................................29, 30

*Thompson v. Commonwealth of Virginia,*
    878 F.3d 89 (4th Cir. 2017) ..................................................................................26

*Thornhill v. Aylor,*
    2016 WL 8737358 (W.D. Va. Feb. 19, 2016) ..........................................17, 20

*United States v. Wheaton,*
    2019 WL 5396661 (D.N.J. Oct. 21, 2019)............................................................25

*Vathekan v. Prince George's Cnty.,*
    154 F.3d 173 (4th Cir. 1998) ................................................................................25

US 169498902v14

*Wall v. Looney*,
  2014 WL 5591917 (W.D. Va. Nov. 3, 2014) ........................................................9, 14, 17, 25

*Waterman v. Batton*,
  393 F.3d 471 (4th Cir. 2005) ..................................................................................27

*Watkins v. City of Oakland, Cal.*,
  145 F.3d 1087 (9th Cir. 1998) ...........................................................................22, 26

*Wiley v. Mayor & City Council of Baltimore*,
  48 F.3d 773 (4th Cir. 1995) ...............................................................................28, 30

*Williams v. Benjamin*,
  77 F.3d 756 (4th Cir. 1996) ..................................................................................14

*Williams v. Wilkinson*,
  132 F. Supp. 2d 601 (S.D. Ohio Feb. 20, 2001) .................................................29

*Wright v. Collins*,
  766 F.2d 841 (4th Cir. 1985) ..................................................................................19

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ...........................................................................................30, 31

42 U.S.C. § 1983 ...............................................................................................10, 13, 14, 15

**Other Authorities**

Federal Rules of Civil Procedure Rule 8 ....................................................................16

Federal Rules of Civil Procedure Rule 12 .......................................................... *passim*

US 169498902v14

# INTRODUCTION

On May 2, 2020, Defendant Canine Officer McCowan released his Virginia Department of Corrections canine on Plaintiff Corey E. Johnson while Mr. Johnson lay unarmed and prostrate on the floor of Red Onion State Prison's ("ROSP") A-1 pod. Other officers, Defendants E. Baker, S. Dean, and P. Carroll, stood by while the canine dragged Mr. Johnson bleeding across the floor of the pod and mangled Mr. Johnson's right wrist and arm. Mr. Johnson received twenty-one stitches for his wounds and nearly a year later, continues to experience numbness and nerve damage to his right arm.

Defendants Jeffrey Kiser, Sergeant J. Stanley, Harold W. Clarke, A. David Robinson, and Major William J. Barbetto (collectively, "Supervising Defendants") and the Commonwealth of Virginia, by and through the Virginia Department of Corrections ("VADOC" and collectively with the Supervising Defendants, the "Moving Defendants") have filed a Rule 12(b)(6) motion seeking to dismiss the constitutional claims against them, arguing primarily that Mr. Johnson has failed to show that his attack was anything more than a one-off incident at ROSP. Moving Defendants' Brief ("Def. Br.") 2–3, 8–12. The Supervising Defendants seek to dismiss Mr. Johnson's claims for injunctive relief on similar grounds, claiming he is unable to show he will sustain future constitutional injury.

But Mr. Johnson's injuries were severe and not an aberration. Instead, they are the consequence of policies adopted by Defendants and training promulgated by Defendants that permit the use of canines to attack inmates. Amended Complaint ("Am. Compl.") ¶¶ 20, 25–28. That these policies have led to numerous prisoner injuries is evident from the number of cases alleging canine officers engaged in excessive force in VADOC facilities, including at ROSP, by releasing patrol canines to bite individuals who posed no threat to officers or others. Am. Compl.

8

¶ 70.  *See also*, *Canady v. Hodges*, 2020 WL 1258656, at *1 (W.D. Va. Mar. 16, 2020); *Goodwyn v. Roop*, 2019 WL 3892428, at *7 (W.D. Va. Aug. 19, 2019); *Wall v. Looney*, 2014 WL 5591917, at *4 (W.D. Va. Nov. 3, 2014); *Peyton v. Clark*, 2014 WL 4657802, at *6 (W.D. Va. Sept. 16, 2014); *Harris v. Elam*, 2019 WL 691791, at *1 (W.D. Va. Feb. 19, 2019); *Bowling v. Clarke*, 2020 WL 4340944, at *1 (W.D. Va. July 28, 2020); *Rose v. Officer Adams*, W.D. Va. Case No. 7:20-cv-00609, ECF No. 1 (filed Oct. 13, 2020).  Like Mr. Johnson, many of the inmates in these cases were complying with orders, facedown on the ground at the time of the attacks unable to do anything to avoid being maimed.  Recent media reports on VADOC's policy on the use of canines in its facilities also have referred to, and even cited from, letters of multiple incarcerated individuals  describing similar incidents.  Reports of similar assaults, in which dogs were brought in or released after altercations had  occurred but since ended, continue to come in.  Under VADOC's own policies, each of the Supervising Defendants knew or should have known of each of these reported incidents; to Plaintiff's knowledge, more than twelve such reports antedate the attack on Mr. Johnson.

The Supervising Defendants' attempt to characterize Mr. Johnson's situation as an isolated occurrence provides no defense.  Mr. Johnson's theory that they bear personal responsibility for his constitutional violations is clear and compelling:  The Supervising Defendants have willfully ignored the fact that VADOC policies and practices allow for, and fail to adequately protect against, deployment of canines to inflict serious physical pain under the guise of behavioral management.  Fourth Circuit law is also clear: The individuals responsible for these policies and practices may be held liable for their inaction under Section 1983, *see, e.g.*, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  The Supervising Defendants' attempts to dismiss Mr. Johnson's constitutional claims should be denied.

9

So too should the Supervising Defendants' attempts to seek dismissal of Mr. Johnson's claims for injunctive relief. Standing for injunctive relief is shown where, as here, the constitutional violation is a result of official policy, and can be enjoined. *Outdoor Amusement Bus. Assn., Inc. v. Dept. of Homeland Sec.*, 983 F.3d 671, 681 (4th Cir. 2020). Separately, standing exists where the unconstitutional conduct occurs with such regularity that it becomes a pattern or practice, and can be enjoined. *See Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999)

The Supervising Defendants' other arguments—that they are entitled to sovereign immunity and that Mr. Johnson has not stated a viable negligence claim—also fail because there is a plainly obvious deficiency in VADOC's policies and procedures and Virginia has not foreclosed negligent supervision claims.

## FACTS PLED IN THE COMPLAINT

Plaintiff Corey E. Johnson, a citizen of the Commonwealth of Virginia, has been incarcerated at ROSP for the past two years. Am. Compl. ¶ 8. On the evening of May 2, 2020, Mr. Johnson was engaged in a fistfight with another prisoner near the telephone booths in the A-1 pods. *Id.* ¶ 30. After Defendant Dean fired several gas canisters at Mr. Johnson, he ceased fighting and stood up, effectively ending the altercation. *Id.* ¶¶ 33–34.

Shortly after standing up, Mr. Johnson saw the Patrol Canine Unit, including Canine Officers McCowan and Baker, enter the A-1 pod and immediately placed himself facedown the ground in anticipation of their orders. *Id.* ¶¶ 35–37, 61. Although Mr. Johnson lay motionless on the ground, Officer McCowan released his canine on Mr. Johnson. *Id.* ¶ 38. The dog latched onto Mr. Johnson's right wrist and arm, dragging him several feet across the prison floor, while Officer McCowan encouraged it to continue the attack. *Id.* ¶ 39–41. Defendant Baker, who was on the

10

pod floor with Officer McCowan, and Defendants Dean and Carroll, who were in the control booth with a clear view of the scene, stood by while Mr. Johnson was mauled. *Id.* ¶¶ 60–65. As a result of Officer McCowan's canine's attack, and Defendants Baker, Dean, and Carroll's failure to intervene against the attack, Mr. Johnson sustained three deep lacerations of approximately one-and-a-half inches; each required twenty-one stiches. *Id.* ¶ 41. He continues to suffer nerve damage and numbness. *Id.* ¶ 48.

The Supervising Defendants are the Warden of ROSP Jeffrey Kiser, ROSP's Institutional Canine Sergeant Stanley, and the administrators within the VADOC system who bear responsibility for the VADOC Canine Policy. *Id.* ¶¶ 10–11, 13–15. The Amended Complaint alleges that the Supervising Defendants were responsible for Defendants McCowan, Baker, Dean, and Carroll's violation of Plaintiff's constitutional rights because, under their leadership, VADOC canine officers utilize their dogs to attack prisoners without justification, and there is a lack of accountability throughout the VADOC system. *See id.* ¶¶ 66–82. Although VADOC operating procedures, including Operating Procedure 435.3, Operating Procedure 420.1, and Operating Procedure 420.2, purport to provide adequate safeguards against constitutional abuses, the use of canines to attack prisoners under the guise of managing behavior in VADOC facilities is systemic. *Id.* ¶ 26. Prisoners in VADOC facilities throughout the state have reported canine attacks strikingly similar to the one experienced by Mr. Johnson, where dogs were used to attack prisoners who posed no immediate threat to anyone. *Id.* Through the Canine Bite Reports, which are required under VADOC Operating Procedure, and their general supervisory roles, the VADOC Defendants were or should have been on notice of these attacks long before Mr. Johnson was mauled. *Id.* ¶¶ 66–82. Yet the Supervising Defendants continue to do nothing.

11

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In ruling on a motion to dismiss, courts must accept all allegations in the complaint as true and dismiss the case only where "it appears beyond doubt that the plaintiff can prove no set of facts to support [its] allegations." *Richmond, Fredericksburg & Potomac RR Co. v. Forst*, 4 F.3d 244, 247 (4th Cir. 1993). This is particularly true when the complaint involves allegations of civil rights violations, because as the Court must be "'especially solicitous' of the wrongs alleged." *Harrison v. USPS*, 840 F.2d 1149, 1152 (4th Cir. 1988). In such cases, courts "must not dismiss the complaint 'unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged." *Id.*

## ARGUMENT

Supervising Defendants collectively raise three basic arguments. First, the Supervising Defendants contend that they are entitled to qualified immunity from the federal law claims because Mr. Johnson has failed to allege a violation of his clearly established constitutional rights. Def. Br. at 10–13. Second, they argue that Mr. Johnson lacks standing to seek prospective injunctive relief and that his request is not narrowly tailored. *Id.* at 7–10. Finally, they argue that Mr. Johnson's state law negligence claim fails because negligent supervision is not recognized and the Supervising Defendants are entitled to immunity. *Id.* at 17–19. The Commonwealth of Virginia separately argues that it is entitled to sovereign immunity against all claims alleged against it. *Id.* at 7. These arguments all fail and this complaint should be allowed to proceed to discovery.

US 169498902v14

A. **Mr. Johnson Has Pled a Viable § 1983 Claim Against the Supervising Defendants for Violation of His Clearly Established Eighth Amendment Rights**

To establish a qualified immunity defense, "a public official must demonstrate that (1) a plaintiff has not alleged or shown facts that 'make out a violation of a constitutional right,' or that (2) 'the right at issue was [not] clearly established at the time of its' alleged violation." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 395–96 (4th Cir. 2014) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity is an affirmative defense, and the burden of proof and persuasion rests with the defense. *Meyers v. Baltimore Cnty, Md.*, 713 F.3d 723, 731 (4th Cir. 2013). The defense can be presented in a Rule 12(b)(6) motion, "when asserted at this early stage in the proceedings—but 'the defense faces a formidable hurdle' and 'is usually not successful.'" *Owens*, 767 F.3d at 396 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). The Supervising Defendants' motion fails to clear this "formidable hurdle."

1. Mr. Johnson has pled a violation of his constitutional rights by Defendants McCowan, Baker, Dean, and Carroll

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). It thus "has been widely held the unjustified striking, beating, or infliction of bodily harm upon a prisoner by the police or a correctional officer gives rise to liability under 42 U.S.C. § 1983." *King v. Blankenship*, 636 F.2d 70, 72 (4th Cir. 1980). A correctional officer also may be liable under a theory of bystander liability if the officer knows that a fellow officer is violating an individual's constitutional right, has a reasonable opportunity to prevent the harm, and chooses not to act. *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203–04 (4th Cir. 2002) (citing *O'Neill v. Krzeminski,* 839 F.2d

13

9, 11–12 (2d Cir.1988)) (observing that an officer who stands by and does not seek to assist the victim could be a "tacit collaborator").

Here, Mr. Johnson alleges that he was brutally and unjustifiably injured by Officer McCowan when Officer McCowan released his canine on Mr. Johnson despite the fact that Mr. Johnson lay prostrate on the floor, had no weapons in his possession, and had not threatened any officers at the scene. *See* Am. Compl. ¶¶ 34–57. Defendants Baker, Dean, and Carroll were all bystanders who failed to stop this attack, instead allowing the canine to drag Mr. Johnson across the floor of ROSP's A-1 pod, mauling Mr. Johnson's right wrist and arm. *See id.* ¶¶ 58–65. These allegations, taken as true—as they must be at this stage— constitute violations of Mr. Johnson's Eighth Amendment rights. *See, e.g.*, *Peyton*, 2014 WL 4657802, at *6 (holding evidence could state a violation of the Eighth Amendment where officers used pepper spray and a canine to bite and cause multiple puncture wounds to an inmate who was lying on the floor); *id.* at *7 (holding defendant who was present when officer deployed canine against compliant inmate could be liable for failure to intervene); *Wall*, 2014 WL 5591917, at *4 (recognizing that yelling "Get him, bite his ass!" and using a canine to bite a peaceable inmate who was no longer engaged in a fight could constitute malicious and unreasonable use of force). These Defendants have all answered Mr. Johnson's amended complaint. *See* ECF No. 41. By answering and not moving to dismiss, the Defendants acknowledge that Mr. Johnson's complaint adequately pleads that Defendant McCowan's deployment of his canine constituted excessive force and that Defendants Baker, Dean, and Carroll failed to intervene.

2.    Mr. Johnson has adequately plead that the Supervising Defendants violated his constitutional rights

As the Supervising Defendants recognize, they may be held liable for the unconstitutional acts of their subordinates—here, Defendants McCowan, Baker, Dean, and Carroll—if they bear

14

"personal responsibility" for those acts. Def. Br. at 10; *Shaw*, 13 F.3d at 799; *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984). To plead that a supervising officer is liable for failing to ensure his subordinates acted within the law, a plaintiff must allege that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to people like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw* at 799. Like the underlying claims of excessive force and failure to intervene, the issue of supervisory liability is "ordinarily one of fact, not law," and the burden on the defendant at the motion to dismiss stage is high. *Id.*

The Supervising Defendants' contention that Mr. Johnson's section 1983 claims against them fail because the allegations in the Amended Complaint are "too vague" and "conclusory" to state a claim, Def. Br. at 9, 11–12, 14, fails to credit the factual allegations of the Amended Complaint and misapplies the standards for a Rule 12(b) motion by claiming that Mr. Johnson must meet a higher standard than is required for a motion to dismiss. *See, e.g.*, Def. Br. at 11 (arguing for dismissal by challenging whether reports of other incidents alleged in Amended Complaint were "credible"). Mr. Johnson's claims are subject only to the notice pleading requirements of Rule 8; there is no requirement that Mr. Johnson "'detail the facts underlying his claims.'" *Collin v. Rector & Bd. of Visitors of Univ. of Va.*, 873 F. Supp. 1008, 1015 (W.D. Va. 1995) (noting that neither the Fourth Circuit nor the Supreme Court has held that a heightened pleading standard applies to individual capacity suits).

US 169498902v14

Because these claims concern factual issues, *see, e.g.*, *Shaw*, 13 F.3d at 799 (supervisory liability an issue of fact, not law); *Hall v. Pruitt*, 2020 WL 4208070, at *3 (W.D.N.C. July 22, 2020) ("reasonableness of [a defendant's] use of force is a jury question"), the Supervising Defendants face a high bar in attempting to dismiss these claims before any discovery has been taken. They cannot clear it. Mr. Johnson's Amended Complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Mr. Johnson has alleged facts that, taken as true (as they must be on a Rule 12 motion), sufficiently allege a persistent and widespread pattern of unjustified canine attacks against prisoners, about which the Supervising Defendants were on notice of and which they failed to correct, either through amendments to the VADOC policies, increased training, or sufficient discipline. Am. Compl. ¶ 10–15, 26, 68, 70–79. Accordingly, Plaintiff alleges a viable claim against the Supervising Defendants for their inaction leading to Mr. Johnson's May 2, 2020 attack.

> a.    *There is a widespread and persistent pattern of using canines as an instrument of excessive force*

Well before May 2, 2020, the Supervising Defendants knew or should have known of the systematic nature of unwarranted canine attacks against prisoners who did not pose a threat to officer or prisoner safety. The Amended Complaint makes clear that long before the incident involving Mr. Johnson, other prisoners reported canine attacks, including those with facts similar, or almost identical, to Mr. Johnson's. Am. Compl. ¶ 26, 70. These complainants often report that they were in compromising positions, facedown and arms out, with little ability to mitigate the physical damage from the canine. *Id.* And, like Mr. Johnson, many of these prisoners suffer permanent physical injuries such a nerve damage and disfigurement, as well as lasting emotional trauma. *Id.* Taken as true, the allegations clearly demonstrate the widespread, egregious use of

16

canines as force by correctional officers across VADOC facilities. *See Shaw*, 13 F.3d at 800 (holding defendant not entitled to summary judgment where defendant had knowledge of at least three incidents of excessive force); *DJ by & through Hughes v. Sch. Bd. of Henrico Cnty.*, 488 F. Supp. 3d 307, 331 (E.D. Va. 2020) (denying motion to dismiss supervisory liability claim when complaint provided a single example but alleged an "atmosphere of widespread bullying"); *Thornhill v. Aylor*, 2016 WL 8737358, at *9 (W.D. Va. Feb. 19, 2016) (holding knowledge of widespread problem adequately alleged where complaint stated "at least two instances" in which the defendant was personally aware of unconstitutional conduct by subordinates).

In addition to the allegations in the Amended Complaint, publicly available information confirms Mr. Johnson's injury is not an isolated event.[1] Numerous cases filed in Virginia federal courts allege canine attacks against compliant prisoners. *See, e.g.*, *Goodwyn*, 2019 WL 3892428, at *7 (canine deployed "against an inmate who was complying with orders and lying face-down on the ground without a weapon" at RSOP); *Wall*, 2014 WL 5591917, at *4 (canine deployed to bite a peaceable inmate at ROSP who was no longer engaged in a fight); *Peyton*, 2014 WL 4657802, at *6 (canine used to bite and cause multiple puncture wounds to an inmate at Wallens Ridge State Prison who was lying peacefully on the floor); *Canady*, 2020 WL 1258656, at *1 (canine deployed at Keen Mountain Correctional Center without verbal warning after plaintiff was already on the floor); *Harris*, 2019 WL 691791, at *1 (canine ordered to attack a prisoner at River North Correctional Center although he posed no threat); *Rose v. Officer Adams*, W.D. Va. Case No. 7:20-cv-00609, ECF No. 1 (filed Oct. 13, 2020) (canine attack against a prisoner without a

---

[1] Should the Court have doubt regarding the sufficiency of Plaintiff's allegations regarding notice to the institutional defendants of VADOC's systemic and unconstitutional use of canines to inflict excessive force, Plaintiff hereby requests leave to amend the complaint to allege further specific facts regarding these attacks.

US 169498902v14

weapon at ROSP). In fact, in one currently pending case involving an assault at ROSP, the plaintiff has alleged that "K9 Officer Stanley, Warden Kiser, and VADOC Director Clarke failed to act on knowledge of a widespread pattern of excessive force by K9 officers against inmates." *Bowling*, 2020 WL 4340944, at *2; *id.* at *1 (alleging canine was released without warning while a prisoner was attempting to comply with officer orders).

Incarcerated individuals have reported and continue to report similar assaults to third-party organizations. For example, a recent Washington Post article noted a letter from a prisoner bitten on the testicles and buttocks while he was lying facedown on the floor. *See* Theresa Vargas, "Virginia is using dogs to 'terrify and attack' prisoners, say lawsuits that describe one man as mauled in his cell," Washington Post, (March 6, 2021), https://www.washingtonpost.com/local/virginia-is-using-dogs-to-terrify-and-attack-prisoners-say-lawsuits-that-describe-one-man-as-mauled-in-his-cell/2021/03/06/db035be8-7e17-11eb-85cd-9b7fa90c8873_story.html. In another letter, a prisoner describes suffering puncture wounds in his right arm pit that resulted in a six-inch scar and permanent numbness from an attack that occurred while the prisoner "was already on the ground." *Id.*

Given that VADOC policies require that such incidents be documented, *see* Am. Compl. ¶ 68, Defendants are undoubtedly aware of *even* more incidents than those that Mr. Johnson can identify before conducting formal discovery. But the cases noted here are more than sufficient to place the Supervising Defendants on notice of the widespread conduct. *See Jones v. Murphy*, 470 F. Supp. 2d 537, 546 (D. Md. 2007) (holding plaintiffs adequately pled widespread conduct when complaint referred to similar incidents being documented in reports and court cases dating back years).

US 169498902v14

VADOC policy also makes clear that the Supervising Defendants were, or should have been, on notice of each of these incidents. *See Shaw*, 13 F.3d at 799 (supervisory liability can be established through "actual or constructive knowledge"). According to these policies, any incident involving a canine bite must be documented in a Canine Bite Report in the Dog Information Governance and Operation System ("DINGO"). Am. Compl. ¶ 68. Canine Bite Reports are forwarded to, at a minimum, Supervising Defendants Barbetto, Stanley, and Kiser. *Id.*; *see Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("Receipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions" where "harm continues over a period of time"). In addition, each Supervising Defendant holds responsibility for training, supervising, and disciplining officers within the VADOC system. *See, e.g.*, Am. Compl. ¶¶ 10–15, 68, 76; *see also Jones*, 470 F. Supp. 2d at 546 (holding plaintiffs adequately pled constructive knowledge by providing allegations regarding warden's authority and duty to train, supervise, discipline, and formulate and implement policy and noting other instances mentioned in reports and court cases). Under Defendants' own policies, they knew or should have known of every one of the many canine attacks that have occurred in VADOC facilities and that the continued use of canines as a means of excessive force is a widespread and persistent consequence of their policy.

b. *Supervising Defendants failed to protect Mr. Johnson from this widespread pattern*

Supervisory liability can be based on a supervisor's ratification of unconstitutional conduct by failing to investigate or approving of the conduct. "[A] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Slakan*, 737 F.2d at 373. Supervisory liability also may be based on a failure to provide officers with adequate training in the face of widespread unconstitutional conduct. *City*

19

*of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) ("It is generally acknowledged that, if the supervisory power is actually aware of the fact that its subordinates are regularly violating constitutional or statutory rights, and the supervisory power fails to implement a training program to quell this pattern, deliberate indifference exists.").

Here, the Amended Complaint alleges that the Supervising Defendants supervised the VADOC Defendants who caused Mr. Johnson's injuries, a point the Supervising Defendants do not contest, and that the injury occurred because of the Supervising Defendants inaction. *See, e.g.*, Am. Compl. ¶¶ 10–15, 68, 76. The allegations in the Amended Complaint thus directly connect the inaction and unreasonable policies of the Supervising Defendants to the assault on Mr. Johnson. *See Jones*, 470 F. Supp. at 547 (finding causation sufficiently alleged where complaint pled wrongs that were inflicted by booking center staff supervised by warden); *Thornhill*, 2016 WL 8737358, at *9 (holding plaintiff "need only allege inaction by [defendant] to support a reasonable inference of deliberate indifference"); *Caramillo v. Correct Care Solutions*, 2020 WL 4747786, at *18 (E.D. Va. Feb. 28, 2020) (finding deliberate indifference sufficiently alleged when complaint asserted that despite lack of knowledge of prior constitutional violations related to lack of medical care, defendant took no action to remedy violations).

There is also a clear causal link between the Supervising Defendants' failure to provide adequate training concerning the proper deployment of canines, including the provision of warnings prior to deployment, *see* Am. Compl. ¶¶ 73, 79, and Mr. Johnson's injury. Mr. Johnson expressly alleges that Officer McCowan failed to provide Mr. Johnson sufficient warning prior to deploying his canine—and indeed, the canine was released while Mr. Johnson was already in compliance. *See Estate of Bryant v. Balt. Police Dep't*, 2020 WL 673571, at *39 (D. Md. Feb. 10,

2020) (holding allegation that officers were not properly trained on disclosing evidence pursuant to *Brady* plausibly alleged supervisory liability); *Brown*, 308 F. Supp. at 707 (denying motion to dismiss because pleadings that a guard's inadequate training led to an omission that contributed to a prisoner's death "clearly allege[d]" that the failure to train was the cause of the harm).

As to the failure to discipline, Supervising Defendants misunderstand Mr. Johnson's argument. His claim is not based solely on the failure to discipline the Individual Officer Defendants for the mauling. Def. Br. at 13. Rather, it is based on the VADOC Defendants' repeated and persistent failure to meaningfully discipline officers who used their canines to attack individuals who posed no threat to officers or others, thereby causing the pervasive pattern alleged in the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 27, 127.

The Supervising Defendants also contend that Mr. Johnson's allegations are "circular and self-defeating" because the Amended Complaint acknowledges the existence of VADOC policies and standards. *See* Def. Br. at 15. But just because the VADOC has policies on canines does not mean those policies comport with constitutional requirements or adequately guide correctional officer conduct, or that they are obeyed or enforced. *See Kovari v. Brevard Extraditions, LLC*, 461 F. Supp. 3d 353, 384 (W.D. Va. 2020) ("A constitutional policy on the books does not insulate the entity from liability for unconstitutional customs or practices."); *see also* Steve J. Martin, Staff Use of Force in United States Confinement Settings, 22 WASH. U. J. L. & POL'Y 145 (2006) (describing the "insidious pattern or practice of unlawful staff use of force that is cloaked with or protected by an air of legitimacy of facial validity"). Indeed, the systematic nature of the constitutional violations from canine attacks suffered by prisoners speaks to the inadequacy of the VADOC canine policies, and the Supervising Defendants bear responsibility for correcting these inadequacies. *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093–94 (9th Cir. 1998) (holding

21

chief of police could be liable for failure to create new canine procedures where there was evidence of numerous injuries to suspects apprehended by use of police dogs); *Catellani v. City of Atlantic City*, 2017 WL 3112820 (D.N.J. July 21, 2017) (denying summary judgment because "indifference to proper management of the K-9 unit" could be "'moving force' behind the constitutionally excessive force launched upon [Plaintiff] by [defendant] and his canine partner").

Nor are the Supervising Defendants' argument that Mr. Johnson has only identified one substandard provision regarding the standard for applying force availing at this juncture of the litigation. Def. Br. at 15–16. As noted in the Amended Complaint, the policies on the use of canines and use of force, including sections that appear to include the standards for such actions, are not publicly available, and those obtained via FOIA contain extensive redactions. Am. Compl. n.1. Many more flawed provisions may be readily apparent once Defendants produce the policies in discovery. It is Kafkaesque for the Supervising Defendants to seek dismissal of this case by asserting reliance on secret, undisclosed policies that cannot be accessed by the public, of which only small portions have been made available to Mr. Johnson prior to this lawsuit. This is not a basis to dismiss under Rule 12.

Ultimately, the widespread, pervasive, and serious nature of these canine attacks is sufficient to permit litigation to proceed against the Supervising Defendants because they knew or should have known of the need to address the alleged constitutional violations. Mr. Johnson has alleged that the "substantial risk of inmate attacks was longstanding, pervasive, well-documented," and the "circumstances suggest[] that the defendant-official[s] being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer v. Brennan*, 511 U.S. 825, 842–43 (1994); Am. Compl. ¶ 26, 70. At this stage, the allegations are sufficient to permit a trier of fact to find that the Supervising Defendants had knowledge of the risk of excessive

22

force by correctional officers. *Id.*; *Collin*, 873 F. Supp. at 1015 (W.D. Va. 1995) (holding that plaintiffs are not required to "'detail the facts underlying [their supervisory liability] claims'" to survive a motion to dismiss). Because Supervising Defendants failed to adequately respond to that risk and correct the alleged deprivation, Mr. Johnson has established a causal connection between the actions of the Supervising Defendants and the unconstitutional conduct to which he was subjected.

3.    Mr. Johnson has pled violations of clearly established law

Where there is a violation of a clearly established constitutional right, there is no qualified immunity. The Amended Complaint alleges violations of Mr. Johnson's constitutional rights through excessive force and the failure to intervene, and that Supervising Defendants are liable for the constitutional violations of their subordinates. Each of these rights meets the standard of "clearly established" because their "'contours [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Ridpath v. Bd. Of Governors Marshall U.*, 447 F.3d 292, 313 (4th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)).

Since at least the 1980s, the Fourth Circuit has made clear that "the eighth amendment unquestionably protect[s] inmates from the unjustified and excessive use of force by prison officials." *Slakan*, 737 F.2d at 377; *King*, 636 F.2d at 72. Further, the Fourth Circuit has long recognized that correctional officers may be liable as bystanders when they knows that a fellow officer is violating an individual's constitutional right, has a reasonable opportunity to prevent the harm, and chooses not to act. *See Randall*, 302 F.3d at 204. It was also well settled, as of May 2, 2020, that supervisors who fail to protect against unjustified and excessive uses of force by their subordinate may be held liable. *Slakan*, 737 F.2d at 377 (denying qualified immunity against supervisors for use of force because "officials were or should have been aware of their firmly

23

established duty to ensure" that instruments of control were not misused).  Contrary to Supervising Defendants' suggestion, Def. Br. at 16, this is true regardless of whether the instrument of force deployed has been deemed *per se* impermissible.  *See Slakan*, 737 F.2d at 377 (denying qualified immunity against supervisors for failure to protect against use of force involving billy clubs, tear gas, and high-pressure hoses, even though such instruments were not previously held to be *per se* improper).

Notably, numerous cases in this Circuit have concluded that deploying a canine against someone who no longer poses a threat constitutes an excessive and unjustified use of force.  *See, e.g.*, *Goodwyn*, 2019 WL 3892428, at *7 (denying qualified immunity because use of force, including engaging a canine, deploying pepper spray, or standing on an inmate's back, could be found excessive depending on context, and the "need for the application of force against an inmate who is complying with orders and lying face-down on the ground without a weapon, is minimal"); *Peyton*, 2014 WL 4657802, at *6 (finding facts could state an Eighth Amendment violation where officers used pepper spray and a canine to bite and cause multiple puncture wounds to an inmate who was lying peacefully on the floor); *id.* at *7 (holding defendant officer who was present when another officer deployed a canine against a compliant inmate could be liable for failure to intervene); *Wall*, 2014 WL 5591917, at *4 (recognizing that yelling "Get him, bite his ass!" and using a canine to bite a peaceable inmate who was no longer engaged in a fight could constitute a malicious and unreasonable use of force); *Canady*, 2020 WL 1258656, at *4 (denying summary judgment motion of officer who allegedly released canine without verbal warning and after plaintiff was already on the floor); *see also* American Bar Association Treatment of Prisoners Standard 23-5.8 ("Canines should *never* be used for purposes of intimidation or control of a prisoner or prisoners.") (emphasis added).

24

Were these cases not enough, the Fourth Circuit established nearly thirty years ago that "improper deployment of a police dog that mauls the target constitutes excessive force in violation of the Fourth Amendment." *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991); *see also Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 179 (4th Cir. 1998) (denying qualified immunity because it was "clearly established in 1995 that failing to give a verbal warning before deploying a police dog to seize someone is objectively unreasonable"). And courts throughout the country have come to the same conclusion. *See, e.g.*, *Alicea v. Thomas*, 815 F.3d 283, 292 (7th Cir. 2016) (denying qualified immunity because "[c]ommanding a dog to attack a suspect who is already complying with orders clearly violates the principles" against excessive force); *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 789 (6th Cir. 2012) (holding there was "ample evidence" to show defendant acted "contrary to clearly established law" by using a canine "whose training was questionable, to attack two suspects who were not actively fleeing and who, because of proximity, showed no ability to evade police custody"); *United States v. Wheaton*, 2019 WL 5396661 (D.N.J. Oct. 20, 2019) (denying qualified immunity because the decision to engage a canine or fail to command a canine to release its bite when person posed no threat constitutes excessive force).

Multiple cases have also held that the failure to ensure adequate policies, procedures, or training regarding the use of canines despite evidence of their inadequacy is itself a constitutional violation. *See Watkins*, 145 F.3d at 1093–94 (denying qualified immunity where chief of police did not establish new canine use-of-force procedures despite evidence of numerous injuries inflicted on suspects by police dogs); *Catellani*, 2017 WL 3112820 (denying summary judgment because "indifference to proper management of the K-9 unit" could be "'moving force' behind the constitutionally excessive force launched upon [Plaintiff] by [defendant] and his canine partner");

25

*Campbell*, 700 F.3d at 790 (affirming denial of summary judgment where plaintiff alleged police chief failed to train, discipline, or otherwise maintain a properly functioning canine unit).

Supervising Defendants' motion incorrectly suggests that Mr. Johnson cannot claim that unconstitutionally excessive force was used against him because he has failed to provide authority expressly prohibiting the specific brutality at issue. *See* Def. Br. at 6, *see also id.* at 15–16 (arguing that plaintiff has not provided any authority that the use of canines is *per se* illegal). Not only do the cases cited in this section refute this point, this is not the law. A "'general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'" *Hope*, 536 U.S. at 741; *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (accord). As the Fourth Circuit has cautioned, drawing too fine a line between "different means of effectuating the same constitutional violation . . . would encourage bad actors to invent creative and novel means of using unjustified force on prisoners." *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 102 (4th Cir. 2017). Mr. Johnson does not need to prove that Defendants' exact behavior has previously been found unlawful "because 'general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'" *Ridpath*, 447 F.3d at 313 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).

VADOC's policies explicitly recognize canines as a means of deploying force against prisoners. *See* Am. Compl. ¶¶ 20, 26 (citing VADOC Operating Procedures 435.5). The existing precedent on canines specifically and use of force generally thus provides Supervising Defendants with plenty of notice that their failure to protect prisoners against malicious and unjustified canine attacks violates the Eighth Amendment. *See Hope*, 536 U.S. at 741 (noting officials can "be on notice that their conduct violates established law even in novel factual circumstances"); *see also*

26

*Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (rejecting qualified immunity related to use of pepper spray even though prior caselaw did not expressly prohibit use of pepper spray); *Amaechi v. West*, 237 F.3d 356, 362–63 (4th Cir. 2001); *Waterman v. Batton*, 393 F.3d 471, 476 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)) (noting that to evaluate whether a right is clearly established, a court must consider "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle involved").

Given the abundant caselaw squarely addressing both the ways in which deploying canines can be unconstitutional and supervisory liability more generally, it is plain that the Supervising Defendants' failure to protect Mr. Johnson against an unjustified canine attack constituted a violation of his clearly established constitutional rights. The Supervising Defendants are thus not entitled to qualified immunity.

**B.      Mr. Johnson Has Proper Standing to Seek Prospective Injunctive Relief and His Request is the Only Adequate Remedy to Prevent Future Injury**

Mr. Johnson has standing to seek prospective injunctive relief in this case. In their Motion, Supervising Defendants rely on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) to argue that Mr. Johnson lacks the standing necessary to request injunctive relief. Def. Br. at 7–9. But *Lyons* concerns cases where there has been a one-time constitutional violation that contravened agency policies and there is no reason to expect future or recurring constitutional violations. *See Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1090–91 (4th Cir. 1997) (explaining future constitutional injury in *Lyons* "could only rest on a series of untenable assumptions"). *Lyons* does not warrant dismissal of injunctive relief claims where, as in this case, the complained-of constitutional violation was authorized under policy. *See Lyons*, 461 U.S. at 110 n.9 (acknowledging plaintiff could have demonstrated standing through "written or oral pronouncement by the LAPD or any evidence

27

showing a pattern of police behavior that would indicate that the official policy"); *Outdoor Amusement Bus. Assn., Inc. v. Dept. of Homeland Security*, 983 F.3d 671, 681 (4th Cir. 2020) (quoting *In re Navy Chaplaincy*, 697 F.3d 1171, 1176–77 (D.C. Cir. 2012)) (internal quotations omitted) (holding that when "a policy that produced a plaintiff's prior injuries remain in effect … the prospect of future injury becomes significantly less speculative"); *Wiley v. Mayor & City Council of Baltimore*, 48 F.3d 773, 775–76 (4th Cir. 1995) (finding "sufficient likelihood" of repeat injury where department "maintains a policy"); *Shreve v. Franklin County, Ohio*, 2010 WL 5173162, at *9 (E.D. Ohio Dec. 14, 2010) (distinguishing *Lyons* because prisoners alleged it was the "custom, policy, and standard operating practice" for corrections deputies to use tasers in a "callous and sadistic manner").   Nor does *Lyons* apply in cases where plaintiffs allege that unconstitutional conduct occurs routinely as a systemic pattern or practice.  *See, e.g.*, *Md. State Conf. of NAACP Branches v. Md. Dep't of State Police*, 72 F. Supp. 2d 560, 565 (D. Md. 1999) (holding *Lyons* inapplicable when "plaintiffs allege a pattern and practice" of unconstitutional activity); *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 825–26 (9th Cir. 2020) (distinguishing *Lyons* when there is evidence of an "ongoing, sustained pattern of" unconstitutional conduct); *Thomas v. County of Los Angeles*, 978 F.2d 504, 507 (9th Cir. 1992) ("[The] possibility of recurring injury ceases to be speculative when actual repeated incidents are documented").

These allegations are precisely the kind that Mr. Johnson makes here.  The constitutional violation and injury he suffered occurred pursuant to Defendants' policies—specifically VADOC Operating Procedures 435.3, 420.1, and 420.2, which authorize officers to deploy canines to bite or physically restrain prisoners.  *See, e.g.* Am. Compl. ¶¶ 20–21, 66–68.  The Supervising Defendants nowhere argue that these policies have been revoked, that attack canines are no longer utilized at RSOP, or that their subordinates violated the policies.  *See Cnty. of Riverside v.*

28

*McLaughlin*, 500 U.S. 44, 51 (1991) ("this case is easily distinguished from *Lyons*, in which the constitutionally objectionable practice ceased altogether before the plaintiff filed his complaint"). Mr. Johnson remains incarcerated at RSOP, which continues to be patrolled by VADOC canine officers operating under the same policies that led to the violations alleged in the Amended Complaint. *See Williams v. Wilkinson*, 132 F. Supp. 2d 601 (S.D. Ohio 2001) (reasoning "odds" of prisoner "coming into contact with a correction officer" whose job was to scrutinize his behaviors "are much greater than Mr. Lyons coming into contact with a police officer in the city of Los Angeles").

It is also sufficiently likely that VADOC canine officers will continue to use their dogs in an unconstitutional manner. Through their application VADOC policies, the Supervising Defendants authorize canine attacks even when there is no threat of death or serious bodily injury to VADOC officers or others. *See Shreve*, 2010 WL 5173162, at *9 (holding that allegations that inmates were tasered pursuant to policy when they pose no physical threat to deputies and with little provocation demonstrated inmates were at risk of future deprivations of their rights). Indeed, at each level of internal review, Mr. Johnson's grievances against Officer McCowan were dismissed because the reviewing officers determined that Officer McCowan had followed VADOC procedures, even though Mr. Johnson was lying prostrate on the floor at the time of the attack. *See* Compl. (ECF No. 1) at 6–7. Because the constitutional violation was a direct product of VADOC policies, the likelihood of future constitutional injury is far from speculative. *See, e.g.*, *Outdoor Amusement*, 983 F.3d at 681; *Shreve*, 2010 WL 5173162, at *9; *Wiley*, 48 F.3d at 775–76.

And Mr. Johnson has alleged more than one isolated act of abuse by VADOC officers. Unconstitutional canine deployments occur with an unfortunate degree of regularity that is ratified

29

and condoned at all levels of the chain of command. *See supra* at 9–12. For this reason too, Mr. Johnson is "sufficient[ly] likel[y]" by Fourth Circuit standards to be wronged in a similar way in the future. *See, e.g.*, *Thomas*, 978 F.2d at 507 ("[The] possibility of recurring injury ceases to be speculative when actual repeated incidents are documented"); *Md. State Conf. of NAACP Branches*, 72 F. Supp. at 565.

The Supervising Defendants' other argument, that the requested injunction is overbroad because it extends beyond the ROSP, Def. Br. at 9–10, does not warrant dismissal, nor is it appropriate at this stage of litigation. The Court may fashion relief necessary to correct the alleged violation at a later time. *See Hall v. Stouffer*, 2018 WL 8335491, at *17 n. 18 (D. Md. Sept. 25, 2018) (noting in order denying motion to dismiss that court may fashion injunctive relief that extends no further than necessary). In any event, VADOC facilities are subject to the same problematic policies and practices, *see supra* at 9–12, and Mr. Johnson is subject to transfer to another facility within VADOC without his consent. Therefore, limiting his request to the use of canines at just ROSP is insufficient to adequately "correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

Accordingly, Mr. Johnson has standing to seek prospective injunctive relief. The Supervising Defendants' motion to dismiss the injunctive relief claims should be denied.

### C.    Mr. Johnson Has Viably Pled Negligence Under Virginia Law and the Supervising Defendants Are Not Entitled to Sovereign Immunity

Supervising Defendants incorrectly claim that Mr. Johnson's negligence claim should be dismissed because they are entitled to sovereign immunity against Mr. Johnson's negligence claim and that in any event, Virginia does not recognize Mr. Johnson's theory of liability. Neither of these arguments warrants dismissal of the negligence claim.

US 169498902v14

1.     Supervising Defendants are not entitled to sovereign immunity

In *James v. Jane*, the Supreme Court of Virginia delineated four criteria for determining the ability of government employees to claim sovereign immunity for negligent conduct: (1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised by the government over the employee; and (4) whether the act complained of involved the use of judgment and discretion.  221 Va. 43, 52, 282 S.E.2d 864, 869 (1980).  To successfully assert a sovereign immunity plea, Supervising Defendants here must satisfy all four factors of the test.  *Id.*  They do not.  Because their material acts and omissions did not involve the use of judgment or discretion, Supervising Defendants fail to satisfy the fourth requirement of the *James v. Jane* analysis.

Acts and omissions that do not involve the use of judgment or discretion are deemed "ministerial."  *See Heider v. Clemons*, 241 Va. 143, 144, 400 S.E.2d 190, 191 (1991) (describing "the performance of duties which do not involve judgment or discretion in their performance but which are purely ministerial") (internal quotation marks and citation omitted).  To evaluate whether an action is ministerial in nature, courts look to the act complained of, rather than the general duties ordinarily performed by the officer in question. *Adams v. NaphCare*, 243 F. Supp. 3d 707, 719 (2017); *accord Heider*, 241 Va. 143, 144 (1991) (stating the courts "must assess whether the act to which liability is asserted involved the exercise of judgment and discretion.").  Governmental defendants often attempt to assert that their acts are not ministerial because they exercised a degree of discretion in their decisions—but as the Supreme Court of Virginia has noted, "[v]irtually every act performed by a person involves the exercise of *some* discretion," *James,* 221 Va. at 52 (emphasis added).  Courts have thus denied pleas of sovereign immunity even when the

31

function performed involved some degree of discretion.  *See, e.g.*, *Houchens v. Rector & Visitors of the Univ. of Va.*, 23 Va. Cir. 202 (1991) (denying immunity to defendants despite the fact that they may have exercised some judgment and discretion).

Instead, to satisfy the fourth factor test under *James*, governmental defendants must show that they were engaged in complex policy determinations.  *See* Prosser and Keeton on the Law of Torts § 132, at 1062 (W. Page Keeton et al. eds., 5th ed. 1984) (labelling an act as discretionary is "probably only a shorthand notation for a more complex policy decision."); *Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex. 1994) (same).  And courts has found that in the ordinary course, a corrections officer's duty of care is ministerial, not a matter of complex policymaking.  In *Adams v. NaphCare, Inc.*, the court denied immunity to prison officials who deprived a prisoner of food and water because such decision-making was not a "complex situation that required the use of judgment and discretion."   243 F. Supp. at 721.   As explained, "[A] jail officer does encounter ordinary circumstances where the duty of care is a ministerial obligation," including where "plainly obvious deficiencies" had developed over the "course of several months . . . ."  *Id.*

Here, there is a "plainly obvious deficiency" to the ordinary ministration of the duty of care.  Mr. Johnson has alleged that Supervising Defendants' actions and omissions in supervision and training consistently led prison officials to use unmuzzled canines to attack against compliant and unresisting prisoners in VADOC facilities.  Am. Compl. ¶¶ 26–28.   Mr. Johnson's allegations evince major and obvious deficiencies in the training, supervision, and penalization of canine officers who repeatedly attack unresisting and compliant prisoners.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999) (allegations at Rule 12 stage must be taken as true and construed in their most favorable light).   Training and supervision can be categorized as discretionary, Def. Br. at 18, but the need to restrain officers from repeatedly mauling prisoners

32

and violating clearly established constitutional safeguards "does not require the exercise of much, if any, discretion or judgment." *Adams*, 243 at 720; *see Jennings v. Hart*, 602 F. Supp. 2d 754, 759 (W.D. Va. 2009) (denying a plea of sovereign immunity for Virginia negligence claims against defendants for placing prisoner in obvious physical harm for a period of ten days). Even if the Supervisory Defendants' jobs *generally* involve their discretion, failing to prevent these unwarranted canine attacks does not fall within it.

Further, this severe deficiency is rooted in VADOC's practices, in contravention of at least some VADOC policies. VADOC Operating Procedure 420.1 plainly restricts use of force to "a last resort" and Operating Procedure 420.2 states that measures used to control prisoner behavior "must be appropriately matched to the seriousness of the behaviors they are intended to control," and "must not be applied any longer than necessary to manage the targeted behaviors." There is no discretion involved in whether supervisors must enforce internal VADOC rules—but the facts alleged, which must be accepted as true, make clear that they have not. Am. Compl. ¶¶ 73–83.

Because the rule at issue is clear and the ongoing violation obvious, the Supervising Defendants' duty is unambiguous and non-discretionary and falls well within the description of ministerial functions under *Adams*. They are thus not entitled to sovereign immunity.

### 2. Mr. Johnson has pled a viable negligence claim

Defendants are mistaken to assert that "Virginia does not recognize a claim for negligent supervision." Def. Br. at 19. In asserting this claim, Defendants' principal authority relies on a case that barred state negligence claims for breaches of duty of reasonable care "imposed upon an employer in the supervision of its employees *under these circumstances . . . .*" *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630, 831 S.E.2d 460, 475 (2019) (citing *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751 (1988))

33

(emphasis added). "[T]he Virginia Supreme Court did not foreclose the possibility of a claim for negligent supervision," through this holding, however, "but, rather, foreclosed such a claim under those circumstances." *Adams v. NaphCare, Inc.*, 244 F. Supp. 3d 546, 551 (E.D. Va. 2017). The ruling was "limited," and the Virginia Supreme Court has thus not "ruled out such a cause of action under Virginia law." *Hernandez v. Lowe's Home Ctrs., Inc.*, 83 Va. Cir. 210 (2011) (allowing a claim for negligent supervision to survive a demurrer based on facts distinguishable from *Dowdy*); *see Parker v. Wendy's Int'l, Inc.*, 41 F. Supp. 3d 487, 492 (E.D. Va. 2014). Accordingly, Supervising Defendants' statement that Virginia forbids claims of negligent supervision "does not reflect the present state of Virginia law." *Adams,* 244 F. Supp. at 551.

Given that Virginia courts have allowed such claims to proceed beyond initial pleadings, Mr. Johnson has clearly stated allegations that construe a plausible claim for relief. It is reasonably foreseeable that using large, unmuzzled dogs to ensure compliance creates a danger of harm. Am. Compl. ¶¶ 22–25. As such, the Supervising Defendants have a duty to use ordinary care and skill to avoid such harm. Mr. Johnson has alleged that the Supervising Defendants' failure to provide such ordinary care pursuant to their duties has led to multiple unjustifiable canine attacks and an overall culture in which such brutality is tolerated. Am. Compl. ¶¶ 26–28.

And, even assuming *arguendo* that Defendants were correct in determining that Virginia courts have foreclosed causes of action for negligent supervision, their analysis would still fail. Under the standard delineated in *James*, public employees such as the Supervising Defendants are not immune from liability for their acts of gross negligence. *James*, 221 Va. at 52–54; *Elder v. Holland*, 208 Va. 15, 19, 155 S.E.2d 369, 373 (1967). Under Virginia law, "gross negligence is that degree of negligence which shows indifference to others as constitutes an utter disregard of prudence amounting to a complete neglect of the safety of another. It must be such a degree of

34

negligence as would shock fair minded people although something less than willful recklessness." *Green v. Ingram*, 269 Va. 281, 290–91, 608 S.E.2d 917, 922 (2005) (internal citations and quotations omitted). Further, "several acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of recklessness or total disregard of another's safety." *Chapman v. City of Va. Beach*, 252 Va. 186, 190, 475 S.E.2d 798, 801 (1996). Whether gross negligence has been established is usually a question of fact to be decided by a jury. *Id*.

Mr. Johnson has sufficiently alleged facts constituting gross negligence. He has alleged that the Supervising Defendants knew of gross failures in the training and supervision of the canine officers—for example, the Complaint alleges that the Supervising Defendants failed to prevent numerous canine attacks against prisoners in their care. Am. Compl. ¶¶ 26, 70. He has alleged that despite knowing of these failures, and despite being consistently apprised of the many incidents of canine attacks, the Supervising Defendants did nothing to address concerns. Am. Compl. ¶ 68. Supervising Defendants thus exhibited "indifference to others" that amounted to a "complete neglect of the safety of another." *Green*, 269 Va. at 290–91. "[F]air minded people" would certainly be "shocked" to find that a prison official with a full view of the repeated attacks by canine officers would choose to look the other way. *Id*. Indeed, media coverage of the use of attack dogs in carceral facilities points to the shock and horror the general public shares toward the absolute indifference of prison officials to incarcerated individuals who are mauled and terrorized. *See, e.g.*, Theresa Vargas, *Virginia is using dogs to 'terrify and attack' prisoners, say lawsuits that describe one man as mauled in his cell*, Washington Post, (March 6, 2021), https://www.washingtonpost.com/local/virginia-is-using-dogs-to-terrify-and-attack-prisoners-say-lawsuits-that-describe-one-man-as-mauled-in-his-cell/2021/03/06/db035be8-7e17-11eb-

35

85cd-9b7fa90c8873_story.html; Am. Compl. ¶ 22 (quoting Human Rights Watch, *Cruel and Degrading: The Use of Dogs for Cell Extractions in U.S. Prisons* (Oct. 9, 2006), https://www.hrw.org/report/2006/10/09/cruel-and-degrading/use-dogs-cell-extractions-us-prisons)); Am. Compl. ¶ 23 (citing The Marshall Project, We Spent A Year Investigating Police Dogs. Here Are Six Takeaways (Oct. 2, 2020), https://www.themarshallproject.org/2020/10/02/we-spent-a-year-investigating-police-dogs-here-are-six-takeaways)).

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss should be denied.

March 30, 2021                                   Respectfully submitted,

/s/ Lauren S. Wulfe
Ian S. Hoffman (VA Bar # 75002)
John A. Freedman (admitted *pro hac vice*)
Shira Anderson (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001-3743
Tel: 202.942.5000
Fax: 202.942.5999
E-mail: Ian.Hoffman@arnoldporter.com
E-mail: John.Freedman@arnoldporter.com
E-mail: Shira.Anderson@arnoldporter.com

Lauren S. Wulfe (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017-5844
Tel: 213.243.4000
Fax: 213.243.4199
E-mail: Lauren.Wulfe@arnoldporter.com

Oren Nimni (admitted *pro hac vice*)
Kelly Jo Popkin (admitted *pro hac vice*)

36

RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
Tel: 202.455.4399
E-mail: oren@rightsbehindbars.org
E-mail: kellyjo@rightsbehindbars.org

US 169498902v14

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 30, 2021, I caused the foregoing document to be electronically filed through the Court's CM/ECF system, which caused a notice of electronic filing and copy of the foregoing to be served on all counsel of record.

Respectfully submitted,

/s/ Lauren S. Wulfe
Lauren S. Wulfe (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa St., 44th Floor
Los Angeles, CA 90017-5844
Tel: 213.243.4000
Fax: 213.243.4199
E-mail: Lauren.Wulfe@arnoldporter.com

US 169498902v14