IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| COREY E. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00582 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| (K-9) OFFICER MCCOWAN, *et al.*, | ) | |
| | ) | By: Hon. Thomas T. Cullen |
| Defendants. | ) | United States District Judge |
| | ) | |

Plaintiff Corey Johnson, an inmate at Red Onion State Prison, filed this action against the Virginia Department of Corrections ("VDOC"), five correctional officers at the prison,[1] and five VDOC supervisory officials.[2] Among other things, Johnson alleges that the correctional officers at Red Onion violated his Eighth Amendment rights by deploying a canine to attack him after he ceased fighting with another inmate and was lying prone on the floor with his arms extended. Johnson asserts that the dog mauled him, lacerating his arm with its teeth. The resulting wound required 21 stitches to close and, according to Johnson, caused permanent nerve damage.

In addition to suing the correctional officers who were present during the attack, Johnson alleges that the other named VDOC officials, including the officers' supervisors and individuals within VDOC's chain of command who oversee the canine program, violated the

---

[1] Defendants (K-9) Officer McCowan, Canine Sgt. Stanley, K-9 Officer E. Baker, C/O S. Dean, C/O P. Carroll, and John Doe.

[2] Defendant Warden Jeffrey Kiser, Canine Sgt. Stanley, Harold Clarke, William Barbetto, and David Robinson (collectively "supervisory Defendants").

Eighth Amendment by failing to train, supervise, and discipline the correctional officers involved and by maintaining inadequate canine policies, training programs, and disciplinary procedures. Johnson also maintains that these supervisors are liable under state law for these shortcomings.

The supervisory Defendants and VDOC filed a motion to dismiss Johnson's Eighth Amendment and state law claims against them, as well as Johnson's specific request that the court issue an injunction to "estop VDOC policies that permit, condone, and ratify canine attacks on prisoners." (ECF No. 19 at 32.) Defendants make several arguments in support of their motion to dismiss, including that Johnson has failed to state Eighth Amendment claims for supervisory liability, and that he lacks standing to seek an injunction related to VDOC's canine policies.

For the reasons explained below, the court rejects both arguments and will deny the motion to dismiss Johnson's supervisory liability claims and claim for injunctive relief. Those claims—and others not subject to the motion to dismiss—will proceed to discovery. The court will, however, grant Defendants' motion to dismiss all claims against VDOC, as well as certain state-law claims against the supervisory Defendants.

BACKGROUND

On May 2, 2020, Plaintiff Corey Johnson was an inmate at Red Onion State Prison ("ROSP") in Wise County, Virginia. On that date, Johnson engaged in a fistfight with another inmate, resulting in prison security deploying gas canisters and canine units. Johnson alleges that he ceased fighting with the other inmate after the gas canisters were deployed but before the canine units arrived. Knowing that the incoming canine officers would order him to lie on

the ground and in anticipation of their orders, Johnson did so before they arrived. He alleges that he was prostrate on the ground with both arms extended when Canine Officer McCowan released his dog and ordered it to attack Johnson. The dog mauled Johnson as he was lying on the ground, dragging him by the arm. Johnson's complaint states that McCowan stood by while his dog mauled Johnson, even encouraging it as it dragged Johnson, tearing open his arm.

Three other correctional officers witnessed the attack but did not intervene. Johnson alleges that these officers should have known the mauling was excessive and should have taken efforts to stop it. He also alleges that the supervisory Defendants at ROSP and VDOC were aware of a pattern of canine officers using dogs to assault inmates, and failed to properly discipline, train, or supervise those canine officers or promulgate policies that would protect inmates from unjustified dog attacks. To substantiate this allegation, Johnson alleges that every incident involving a canine bite is logged in VDOC Dog Information Governance & Operation (DINGO) System, along with photographs of the injury. He further alleges that Defendants Barbetto and Stanley are notified of every dog-bite incident, and that every DINGO report is conveyed to Defendants Barbetto, Kiser, and Stanley.

Johnson has now brought a series of claims based on the alleged unprovoked dog attack. His seven-count complaint contains: an Eighth Amendment excessive force claim and claims for assault, battery, and intentional infliction of emotional distress against Defendant McCowan; Eighth Amendment deliberate indifference and bystander liability claims against Officers Baker, Dean, Carroll, and an unknown bystander officer; Eighth Amendment failure to train, supervise, or discipline claims against Defendants Kiser, Stanley, Clarke, Robinson,

and Barbetto; generic Eighth amendment claims against Defendants VDOC, Clarke, Robinson, and Barbetto; and common-law negligence claims against Defendants Kiser, Stanley, and Barbetto. His complaint seeks a declaratory judgment, money damages, and an injunction to "estop VDOC policies that permit, condone, and ratify canine attacks on prisoners." (ECF No. 19 at 32.)

Defendants now move to dismiss some of Johnson's claims, arguing that: (1) VDOC is not a "person" under section 1983 and is therefore immune from suit under the Eleventh Amendment; (2) Johnson lacks standing to seek injunctive relief; (3) Johnson has not stated a claim for failure to train, supervise, or discipline under section 1983; (4) Defendants should be granted qualified immunity with respect to Count V of Johnson's complaint; and (5) Virginia law does not recognize a cause of action for negligent supervision. The court agrees that VDOC is not amenable to suit and that Virginia law does not recognize Johnson's negligence claims. The court will therefore grant the motion to dismiss with respect to Johnson's claims based on Virginia negligence law and all claims against VDOC. On the remainder of Johnson's claims—namely his Eighth Amendment direct liability, bystander liability, and supervisory liability claims—Johnson's complaint makes factual allegations that, taken as true, are sufficient to state a claim for relief.

<u>STANDARD OF REVIEW</u>

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557.)

<u>DISCUSSION</u>

## I.   Dismissed Claims

The court will grant the motion to dismiss on all claims against VDOC because it is immune from suit under the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. While the text of the amendment only renders states immune from suits by citizens of other states, the Supreme Court has recognized that the protections of sovereign immunity reach beyond the words of the amendment and render states immune from suits by their own citizens as well. *See Alden v. Maine*, 527 U.S. 706, 727–28 (1999). In essence, the amendment "render[s] States immune from being hauled into federal court by private parties." *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015).

Section 1983 of Title 42 of the U.S. Code does not abrogate a state's sovereign immunity from suit. Instead, it allows suits against "persons"—generally state officials—for

violations of civil liberties. The state itself, including entities that are "arms of the state," are not "persons" under Section 1983 and remain immune from suits like the one Johnson brings here. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). This sovereign immunity renders VDOC immune from suit as an arm of Virginia. Johnson does not contest this conclusion in his briefing.

The court will also dismiss Johnson's state-law negligent supervision claims because the Supreme Court of Virginia has held that Virginia does not recognize a cause of action for negligent supervision. In *A.H. v. Church of God in Christ, Inc.*, 831 S.E.2d 460 (Va. 2019), that court upheld a circuit court's ruling rejecting a negligent supervision claim, holding that "A.H.'s allegations of negligence, therefore, cannot be predicated upon a stand-alone theory that the church defendants owed her a duty to supervise [their employee]." 831 S.E.2d at 475. In rejecting the negligent supervision claim, the court cited two Virginia cases and an Eastern District of Virginia case. In the parentheticals of those cites, the court included the quotes "Virginia does not recognize a claim for negligent supervision" and "federal and Virginia courts have held that Virginia does not recognize negligent supervision as a valid cause of action." *See A.H.*, 831 S.E.2d at 475; *Chesapeake & Potomac Tel. Co. of Virginia v. Dowdy*, 365 S.E.2d 751, 754 (1988); *Williams v. Shall*, Record No. 120889, 2013 Va. Unpub. LEXIS 1, at *3 (June 6, 2013); *Eley v. Evans*, 476 F. Supp. 2d 531, 532 n.3 (E.D. Va. 2007). While the text of the opinion itself never wholesale rejects negligent supervision claims, the choice of

parentheticals is clear enough—there is no negligent supervision cause of action in Virginia. In light of *A.H.*, the court will dismiss Johnson's claim for negligent supervision.[3]

The court will therefore grant in part Defendants' motion to dismiss. Johnson's claims against VDOC will be dismissed because it is immune to suit under Section 1983; his claims that sound in negligent supervision will be dismissed because such a theory is not viable under Virginia law.

## II.   Surviving Claims

The court will deny the motion to dismiss Johnson's remaining claims because the allegations in his complaint, taken as true, make out a violation of his Eighth Amendment rights.

Defendants make four arguments in favor of dismissal of these claims: (1) Johnson lacks standing to seek injunctive relief; (2) Johnson's factual allegations are insufficient to make out a claim for failure to train, supervise, or discipline; (3) Johnson's claims are not cognizable against Defendants in their individual capacity; and (4) Defendants are entitled to qualified immunity. The court will address each in turn.

---

[3] Johnson argued in his brief and at oral argument that, even if Virginia does not recognize his negligent supervision claim, he should be allowed to bring a gross negligence claim. The court disagrees for two reasons. First, his complaint does not bring a gross negligence claim. (*See* ECF No. 19 at 31.) Second, in Virginia, gross negligence, while a distinct claim, is simply negligence involving a greater degree of indifference to the rights of others, falling somewhere between negligence and recklessness. *See Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016). Pivoting to gross negligence cannot save Johnson's negligent supervision claim because its failure lies not in the degree of indifference alleged, but in the underlying theory of culpability. *See Commonwealth v. Giddens*, 816 S.E.2d 290, 294 (Va. 2018) (explaining that negligence and gross negligence differ only in degree of negligent conduct); *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918–19 (Va. 2004) (same). The degree to which defendants violated their duty to supervise is irrelevant if the duty doesn't exist in the first instance.

### A. Injunctive Relief

Defendants first argue that Johnson lacks standing to seek injunctive relief regarding VDOC's policies on the use of dogs under the rule of *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). In *Lyons*, the Supreme Court held that a plaintiff did not have standing to seek an injunction barring the Los Angeles police from using choke holds. *See id.* at 109. During a traffic stop, the Los Angeles Police placed Lyons in a choke hold despite his compliance with their orders. He sought an injunction against the future use of such holds, arguing that the Los Angeles police routinely employed them when they were not justified. *See id.* at 105–06. The Supreme Court held that Lyons failed to demonstrate a case or controversy with respect to his claim for an injunction, writing:

> That Lyons may have been illegally choked by the police on October 6, 1976, while presumably affording Lyons standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part…In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.

*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

This analysis is, in many ways, on point with Johnson's claims. The focal point of his claim is a previous injury, and he does not make the kind of allegations the Court highlighted in *Lyons*—that canine officers always use dogs on inmates, or that VDOC ordered or

authorized canine officers to use dogs on compliant prisoners. But the facts of this case, specifically the fact that Johnson is housed in a prison, provide a narrow window for Johnson to demonstrate standing in spite of *Lyons*.

The central holding in *Lyons* "is based on the obvious proposition that a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Davis v. Cnty. of Amherst*, No. 6:07CV00017, 2008 WL 591253, at *2 (W.D. Va. Mar. 3, 2008) (quoting *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992)). A plaintiff cannot raise a future injury that is "merely conjectural or hypothetical," and then use that conjectural injury to seek injunctive relief. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). In *Lyons*, there were two levels of conjecture between the plaintiff's past injury and his alleged future one: the hypothetical future encounter with police, and the hypothetical use of an illegal chokehold. It was those uncertainties that allowed the Court to conclude that Lyons's injury would "likely" remain in the past, and that his future injury was "merely conjectural." *See Lyons*, 461 U.S. at 105–07. Crucially, this means that the underlying judgment of the *Lyons* Court was an empirical one. The impediment to standing did not lie in the nature of Lyons's claim; he simply failed to demonstrate "a sufficient likelihood that he w[ould] be wronged again." *Lyons*, 461 U.S. at 111. This implies that a plaintiff bringing the same kind of claim could have standing if their claim of future injury was less conjectural—and more concrete—than Lyons's claim.

Johnson's claim of future injury is substantially more concrete than Lyons's. Where *Lyons* presented two levels of conjecture—the hypothetical future encounter with police and the hypothetical use of a chokehold—Johnson's claim presents only one. He need not

speculate about future encounters with the law enforcement officers he alleges will cause his injury—he will certainly encounter VDOC canine officers, likely every day. By virtue of being housed in a prison, Johnson will inevitably encounter correctional officers in a way that Lyons would not inevitably encounter police officers. *See Williams v. Wilkinson*, 132 F. Supp. 2d 601, 606 (S.D. Ohio 2001) ("The odds the Plaintiff coming into contact with a correction officer are much greater than Mr. Lyons coming into contact with a police officer in the city of Los Angeles."). This changes the standing analysis by moving a hypothetical future run-in with law enforcement from the realm of conjecture to that of certainty, removing one level of conjecture compared to Lyons.

The prison context also changes the standing analysis when it comes to the second hypothetical in *Lyons*—that a future encounter with law enforcement will involve the complained-of illegal action. It does so by dramatically increasing the number of future interactions between Johnson and VDOC canine officers. The Supreme Court was skeptical that Lyons could establish that any given future interaction with a police officer would involve a choke hold. *Lyons*, 461 U.S. at 108 ("And it is surely no more than speculation to assert either that Lyons himself will again be involved in one of those unfortunate instances [of an illegal choke hold] . . . ."). Such skepticism becomes much more difficult when the plaintiff encounters the alleged bad actors every day. Suddenly, even a remote possibility of future harm is multiplied dramatically. This is not to say, of course, that VDOC prisoners will inevitably be attacked by rogue canine officers, but the principle holds: Johnson's claim of future harm is substantially more concrete than that in *Lyons* by virtue of the sheer number of his interactions with canine officers.

Put simply, the court is unable to conclude, based on Johnson's pleadings, that any injury will "likely" remain in the past. Johnson claims that the illegal use of dogs is "pervasive," and that canine officers routinely use dogs on prisoners who "pose[] no threat." (ECF No. 19 at 17.) Thus, according to Johnson's allegations, he spends every day encountering individuals who engage in a pervasive practice of setting dogs on non-threatening individuals. That is a materially different situation than the one presented in *Lyons*. *See Shreve v. Franklin Cnty.*, No. 2:10-CV-644, 2010 WL 5173162, at *9 (S.D. Ohio Dec. 14, 2010). Where the record in *Lyons* strongly supported the factual conclusion that future chokeholds were unlikely, the facts of this case paint a murkier picture. If, with the benefit of discovery, the situation becomes clearer and the court is able to conclude that Johnson's hypothetical future injuries are "merely conjectural," the parties are invited to revisit their standing arguments. But taking Johnson's allegations at face value, the court cannot conclude that he is unlikely to experience the future harm identified in his complaint.

Next, Defendants argue that Johnson's request for prospective relief is impermissibly broad under the Prison Litigation Reform Act ("PLRA"). Johnson's complaint asks the court to "[p]ermanently enjoin and estop VDOC policies that permit, condone, and ratify canine attacks on prisoners." (ECF No. 19 at 32.) The PLRA provides that a court's authority to order injunctive relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and requires that any injunction be "narrowly drawn." 18 U.S.C. § 3626(a)(1)(A). This statute "merely codifies existing law and does not change the standards for determining whether to grant an injunction." *Smith v. Ark. Dep't of Correction*, 103 F.3d 637, 647 (8th Cir. 1996) (citing *Williams v. Edwards*, 87 F.3d 126,

133 (5th Cir. 1996)). Thus, it provides no independent basis for dismissing Johnson's claims. What restrictions it may impose are not triggered unless and until the court actually fashions injunctive relief. *See Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir. 1996) ("The district court has fashioned no prospective relief and the provisions of the Act have yet to be triggered in this case."). If and when the time comes, the court will fashion an appropriate injunction. Until that time, 18 U.S.C. § 3626(a)(1)(A) does not apply, and Defendants' argument is premature.

**B. Eighth Amendment Violations**

Defendants argue that Johnson's complaint fails to state a claim for failure to train, supervise, or discipline because his allegations are too vague to support imposing supervisory liability. The court disagrees. Johnson has provided allegations which, taken as true, are exactly the kind required to support a claim of supervisory liability.

In order to make out an Eighth Amendment claim for supervisory liability, a plaintiff must demonstrate

> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Defendants argue that Johnson's allegation of a pervasive pattern of deliberate indifference to prisoners' safety with respect to the use of dogs is insufficient to support his

claim of supervisory liability. Specifically, they argue that Johnson has not properly pleaded that supervisory Defendants were aware of any pattern of misconduct because he has not provided any details of other incidents involving the misuse of dogs. (*See* ECF No. 43 at 11.)

This may be a compelling argument at summary judgment, but at the motion to dismiss stage, the court is obligated to take Johnson's factual allegations as true. Johnson has alleged that there is a pattern of improper use of dogs, that the supervisory defendants were aware of this fact, and that there are records of each such incident that he could obtain via discovery. (*See* ECF No. 19 at 3–4, 15–17, 24, 27, 28.) To bolster his allegations, he has pointed the court to publicly available information regarding canine biting incidents at VDOC prisons, including a series of lawsuits against ROSP. (*See* ECF No. 47 at 17–18.) These allegations are sufficient to survive a motion to dismiss. At this stage, Johnson is not required to provide the court with the precise details of each previous incident involving a dog. It is enough to provide the court with allegations that there have been a series of these incidents and that the prison has documentation of them. The public information provided in his briefing—while not a substitute for allegations in a complaint—clarifies that the other biting events referenced in the complaint are more than mere speculation.

Defendants also argue that Johnson's supervisory liability claims fail because: (1) he has not alleged a causal relationship between any specific deficiency in training and the particular violation alleged (*see* ECF No. 43 at 12–13); and (2) supervisory failure-to-discipline claims are not cognizable under section 1983 (*id.* at 13). Both arguments are incorrect.

As to the first argument, Johnson alleges that the supervisory Defendants failed to train the guards with respect to proper warnings (which Johnson says he did not receive) and failed

to train guards not to use dogs on compliant prisoners (which Johnson alleges he was). (*See* ECF No. 19 at 9, 12, 16–18.) As to the second argument, Johnson's complaint also clearly alleges (and his briefing clarifies) that the alleged failure to discipline is relevant to his claims insofar as supervisory Defendants failed to discipline officers after past incidents of misconduct, thereby failing to supervise them properly and aiding in establishing the pattern of constitutional violations. (*See* ECF No. 19 at 9, 17–18; ECF No. 47 at 21.) Thus, the failure to discipline is part of Johnson's supervisory liability claims and is cognizable under Section 1983.

Defendants' final two arguments are directed at Count V of Johnson's complaint. As an initial matter, the precise nature of Count V is not clear from Johnson's pleadings. Unlike his other claims, it is labeled simply as "Eighth Amendment," with no descriptor. The substance of the claim accuses Defendants Clarke, Robinson, and Barbetto of failing to promulgate or enforce adequate policies regarding the use of canines, something Johnson alleges led to the use of excessive force against him. (*See* ECF No. 19 at 28–29.) The court construes Count V to be an additional failure-to-supervise claim based on supervisory Defendants' alleged failure to promulgate and enforce policies necessary to keep prisoners safe by ensuring proper use of canines in VDOC prisons.[4]

Defendants make two arguments in favor of dismissing Count V. First, they argue that the claims brought therein are not cognizable against individual defendants because they allege an unconstitutional policy or practice. (*See* ECF No. 43 at 14–17.) This appears to be an

---

[4] At oral argument, the court sought clarification from Johnson as to the nature of Count V. His counsel's answers did not resolve the question, but the court believes that this is the best reading of the complaint and understanding of Johnson's representations.

argument that Johnson's Count V is, in essence, a *Monell* claim and therefore cannot be brought against individual defendants. The sole basis for this argument is that Count V "appears to allege liability on the basis of unconstitutional practices and policies." (ECF No. 43 at 14.) The court does not discern anything resembling a *Monell* claim in Count V or anywhere in the complaint. The court is aware of no reason (and defendants cite none) that an Eighth Amendment claim based on prison policy could not be brought against individual defendants.

Defendants' second argument against Count V is that Johnson has failed to establish that any VDOC policies regarding the use of canines violate clearly established law. Therefore, they assert that Count V should be dismissed under the doctrine of qualified immunity. (*See id.* at 16–17.) Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013) (cleaned up); *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014); *Lucas v. Shively*, 31 F. Supp. 3d 800, 810 (W.D. Va. 2014). Evaluating a claim of qualified immunity involves a two-part test: first, do the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and second, did the actions violate a clearly established right of which a reasonable person would have known? *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In reviewing a claim of qualified immunity, the district court need not consider the questions in a specific sequence. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the defendant prevails on either question, the inquiry ends, and he is entitled to judgment as a matter of law. *See Clem v. Corbeau*, 284 F.3d 543, 549

(4th Cir. 2002). As the party asserting qualified immunity, defendants have the burden of proving the defense. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)).

Defendants make three contentions to support dismissal under qualified immunity, all of which are either illogical or factually inaccurate.[5] First, Defendants assert that Johnson's arguments are "circular and self-defeating" because he alleges that VDOC's practices and policies with respect to canines fail to ensure compliance with VDOC operating procedures. This, Defendants argue, means that VDOC's policies *are* adequate, because the operating procedures provide the necessary protections. (*See* ECF No. 43 at 15.) Defendants' argument fails as a matter of simple logic. If VDOC's canine operating procedures are inconsistent with other VDOC policies or procedures, that only lends credence to Johnson's claims. It would make no sense to absolve the defendants of liability because they have adopted operating policies which implicitly recognize that their canine policies and procedures are inadequate. That VDOC operating policies allegedly demand a higher standard of safety than is guaranteed by its policies and procedures only aids Johnson's claim.

Second, Defendants argue that Johnson "does not specify which provisions of VDOC's policies he deems to be deficient." (*Id.*) This is simply not true. Johnson's complaint states: "Operating Procedure 435.3, Operating Procedure 420.1, and Operating Procedure 420.2 do not provide meaningful guidance or restrictions on the use of canines . . . ." (ECF No. 19 at 8.) The complaint does make allegations about other, unnamed policies, but Johnson

---

[5] Notably, defendants do not argue that qualified immunity protects them if Johnson has stated a claim. In other words, they do not contest the second prong of the qualified immunity analysis—that a reasonable person in their position would have known the alleged conduct violated Johnson's rights.

indicates that he lacks the necessary information to be more specific. (*See id.* at 9 ("On information and belief, VDOC policies and practices permit or fail to prevent Canine Officers from deploying canines before sufficient time is provided for a prisoner to comply with officer orders.").) Moreover, Johnson's complaint takes aim not only at official VDOC policies, but at the practices of those who create and enforce them. (*See e.g., id.* at 2, 9, 25, 27–29.) It is reasonable to infer from Johnson's complaint that such practices and customs are not all codified, and his claims cannot be dismissed simply because he premises them on a course of conduct that is not based on written policy.

Finally, Defendants assert they should be granted qualified immunity because, to the extent Johnson argues that the use of canines in prison is *per se* unconstitutional, he has not provided any federal authority to support his claim. But Johnson's complaint does not assert that the use of canines is *per se* unconstitutional. The complaint accuses Clarke, Robinson, and Barbetto of failing to promulgate adequate policies or enforce existing ones; it does not seek to impose liability for allowing the use of dogs in the first instance.

## CONCLUSION

Johnson's complaint suffers from two defects: he has brought suit against VDOC, an entity immune from suit, and he has brought a negligent-supervision claim that is not viable under Virginia law. Thus, the motion to dismiss will be granted with respect to his negligent supervision claims and claims against VDOC. But Johnson's complaint is adequate in all other relevant respects for purposes of a motion to dismiss, and the court will otherwise deny the motion to dismiss.

**ENTERED** this 19th day of July, 2021.


                                    */s/ Thomas T. Cullen*
                                    HON. THOMAS T. CULLEN
                                    UNITED STATES DISTRICT JUDGE