**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

COREY E. JOHNSON,

      Plaintiff,

v.                                    Case No.  7:20cv582

(K-9) OFFICER MCCOWAN, *et al.*,

      Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY
OF ERNEST BURWELL**

      Defendants, by counsel, submit the following in support of their Motion *In Limine* to Exclude the Expert Testimony of Ernest Burwell:

<u>Plaintiff's Claims</u>

      Plaintiff, Corey E. Johnson, a Virginia inmate housed at Red Onion State Prison ("Red Onion") asserts claims under 42 U.S.C. § 1983 and Virginia tort law regarding the use of force against him by Defendant K-9 Officer McCowan.  Johnson alleges that McCowan used excessive force against him in violation of the Eighth Amendment by commanding and allowing his patrol dog to engage Johnson. Johnson also alleges that Defendants K-9 Officer Baker, C/O S. Dean, and C/O P. Carroll failed to protect him and were deliberately indifferent in violation of the Eight Amendment. He asserts additional claims under theories of supervisory liability against Defendants Jeffrey Kiser, K-9 Sergeant J. Stanley, Harold W. Clarke, A. David Robinson, and William J. Barbetto failed to properly supervise, train, or discipline their subordinates and failed to promulgate adequate policies.  In addition to his Eighth Amendment claims, Johnson seeks to hold McCowan liable under the state-law torts of assault, battery, and intentional infliction of

emotional distress.

Burwell's Proposed Testimony

Burwell is expected to testify regarding the use of a prison canine on Plaintiff Corey Johnson on May 2, 2020 and certain of VDOC's policies and training materials concerning its canine program. He is also expected to testify in rebuttal to the expert testimony of Michael W. Kmiecik.[1] Although Burwell offers numerous opinions and sub-opinions on a variety of subjects, his testimony is expected to concentrate on the following opinions:

(1) "McCowan used objectively unreasonable force and failed to follow generally accepted standards and practices for a canine officer . . . when he released his canine on Mr. Johnson on May 2, 2020." (Report p. 7).

(2) The duration of the dog "bite in this incident was unreasonable." (Report p. 7).

(3) Polices of the Virginia Department of Corrections ("VDOC") "do not align with generally accepted law enforcement standards and practice on use of force or use of canines." (Report p. 8).

(4) "VDOC Supervisors for the VDOC Canine Program failed to take appropriate steps to stop or prevent the deployment of the canine attack on Mr. Johnson." (Report p. 8).

Expert Witness Standard

Federal Rule of Evidence 702 allows a "witness who is qualified as an expert by

---

[1] Burwell's Initial and Rebuttal Reports are attached as exhibits to Defendants' separately and simultaneously filed motion to file documents under seal. References to his report are made as "Report" followed by the page number. Excerpts from the transcript of his deposition testimony (referenced as "Tr." followed by the page, a colon, and line number) are also attached to the motion to file documents under seal.

knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), district courts must act as gatekeepers to ensure that expert testimony is both reliable and relevant. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (holding that the district court failed to satisfy the gatekeeping requirement). A trial court abuses its discretion if it does not ensure that proffered expert testimony is sufficiently reliable and relevant before it is submitted to the jury. *See Sardis*, 10 F.4th at 282. The proponent of an expert opinion bears the burden of establishing the qualification, reliability, and helpfulness by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592, n.10.

"[T]hroughout the admissibility determination, a judge must be mindful of other evidentiary rules, such as FRE 403, which permits the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir.), *cert. denied*, 515 U.S. 1168 (1995) (quoting *Daubert*, 509 U.S. at 595).

## ARGUMENT

For the reasons stated below, the Court should exclude or limit the expert testimony of

Ernest Burwell.

I.

<u>Burwell's Testimony Based on the Wrong Legal Standard Should Be Excluded</u>

Burwell's opinions are based on the wrong legal standard. As such, they are not relevant and should be excluded. "[I]f an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis*, 10 F.4th at 281. Relevance is "'a precondition to admissibility.'" *Sardis*, 10 F.4th at 282 (quoting *Daubert*) (emphasis added by Fourth Circuit). "[E]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" to the trier of fact. *Daubert*, 509 U.S. at 597.

Here the relevant law is the Eighth Amendment, not, as Burwell would have it, the Fourth Amendment. *See Hudson v. McMillian*, 503 U.S. 1 (1992). The Eighth Amendment sets a two-part standard comprised of both a subjective and objective component. *See id.* The objective component asks whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id.* at 8. The subjective component asks whether the officials applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6. The subjective inquiry considers the following five factors: (1) the need for application of force, (2) "the relationship between that need and the amount of force used," (3) the extent of the injury, (4) "the threat reasonably perceived by the responsible officials" based on the facts known to them, and (5) "any efforts made to temper the severity of a forceful response." *Id.* at 7. Although VDOC incorporates some instruction from Fourth Amendment decisions and police departments in its policies and training materials, the "objective reasonableness" standard of the Fourth Amendment does not apply to the use of force

in the carcereal context.[2]

Instead of applying the Eighth Amendment, Burwell relies on and incorporates the "objective reasonableness" standard of the Fourth Amendment, which applies to the use of force on free citizens, not on incarcerated people. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under this standard, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Burwell's testimony inextricably depends on his misplaced assumption that the objective test of the Fourth Amendment governs this case. For example, he expressly bases his opinions on decisions applying the Fourth Amendment. *See, e.g.,* Report pp. 13-14 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir. 1989) (a decision evaluating the use of force by police officers apprehending a free citizen);[3] Report p. 11 (describing the facts underlying *Mancini v. City of Indianapolis, Indianapolis Metropolitan Police Dep't*, No. 1:16cv-02048, 2018 WL 4680188 (S.D. Ind. Sept. 28, 2018) (same)). He relies on policies that apply to conduct of police officers or sheriffs apprehending free citizens, not policies that govern the use of force in the carcereal setting. *See, e.g.,* Report pp. 14-16 (quoting the International Association

---

[2] Further, Section 1983 does not provide a remedy for violations of policies or procedures voluntarily created by the Commonwealth of Virginia or its agencies. *See Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994) ("the Constitution creates no entitlement to grievance procedures or any such procedure voluntarily established by a state").

[3] Burwell states that "[a]ll of the canine units I have been associated with and trained with followed [*Kerr*], and then recites the Eleventh Circuit's description of the facts of *Kerr*, not the court's ruling. Report p. 13 (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1550-51). In *Kerr* the Eleventh Circuit expressly declined to decide the constitutionality *vel non* of the policy, stating that federal courts lacked authority "to perform an assessment of the abstract constitutionality of government policies." *Id.* Additionally, Burwell's Report misrepresents as part of the *Kerr* decision the paragraph beginning with "[t]he handler will remove the dog at the first possible moment" and ending with "shall be included in the handler's supplemental report." (Report p. 13). This paragraph does not appear in the *Kerr* decision.

of Chiefs of Police (IACP) Papers and Policies); pp. 17-18 (quoting the policies of the Los Angeles County Sheriff's Department and the Seattle Police Department); p. 29 (same).  He grounds his opinions repeatedly and exclusively on the objective reasonableness standard.  *See, e.g.,* Report p. 6 ("McCowan used objectively unreasonable force"); p. 7 ("any duration of bite is objectively unreasonable and excessive").

The jury here must evaluate, among other things, the threat reasonably perceived by the responsible officials based on the facts known to them at the time.  *See Hudson*, 503 U.S. at 7.  Because the subjective prong of the Eighth Amendment standard requires that the official either knew or drew the inference from facts that he knew at the time of his conduct, the benefit of hindsight cannot support Plaintiff's claims.  *Cf. Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (rejecting an expert's "impermissible 20/20 hindsight" where officials did not have knowledge of serious medical condition).  Burwell, however, ignores what the officers reasonably perceived during the ongoing incident.  Instead, from a position of 20/20 hindsight, Burwell opines that Johnson did not pose an immediate threat to the safety of the officers and that he was not resisting commands.  *See, e.g.,* Report p. 22 (the use of force "was unreasonable because Mr. Johnson was not an immediate threat to the safety of any of the officers or other inmates in A-1 Pod"); p. 22; *see also* p.33-35 (the dog handlers' incident reports "fail to prove any objectively reasonable grounds for the use of canines").  Even if Burwell's assumptions are deemed factually correct, they are not relevant.  Under the Eighth Amendment, the issue turns on what the officer perceived at the time of the incident, not on some evaluation of objective reasonableness conducted after the fact.

Because the Fourth Amendment is not at issue here, none of Burwell's opinions is relevant.  Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or

less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The *Daubert* Court's analogy to the irrelevance of an expert's testifying on the phases of the moon is apt here. The Court observed: "(absent creditable grounds supporting such a link), evidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night." *Daubert*, 509 U.S. at 591. Burwell's testimony that the use of force and the duration of the bite were "objectively unreasonable" is like the scientist opining that the moon is full when that testimony does not have a "a valid scientific connection to the pertinent inquiry." *Id.* at 592. Burwell's testimony based on the objectively reasonable standard does not have a valid connection to the pertinent inquiry of whether the use of force was excessive in violation of the Eighth Amendment. Under *Daubert*, it should be excluded.

Where, as here, an expert's opinion is based on the wrong legal standard, it should be excluded. *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104 (S.D. Cal. 2012) (excluding causation expert where his opinions were based on "erroneous legal conclusions"); *United States Gypsum Co. v. Lafarge N. Am.*, 670 F. Supp. 2d 737, 744 (E.D. Ill. 2009) (excluding expert's testimony that "applied a legally incorrect standard"); *Federal Realty Inv. Trust v. Pacific Ins. Co.*, 760 F. Supp. 533 (D. Md. 1991) (precluding expert testimony on a "relative exposure" standard that was wrong as a matter of law and prohibiting expert from making any reference to "relative exposure"). In *Novatel Wireless*, the Court compared the expert's testimony to the legal standard that the plaintiff was required to meet at trial. The district court concluded that the defendants' expert "offered an incorrect legal opinion of what [wa]s required by the Plaintiff's to show loss causation" and that there was no indication that the expert would provide any testimony aside from testimony based on his incorrect legal

conclusions. *Novatel Wireless*, 846 F. Supp. 2d at 1107. Because the expert's "analysis was based on a loss causation standard that is incompatible with that set forth by the Ninth Circuit," the district court precluded him from testifying. *See id.* at 1108. Likewise, Burwell's entire report and rebuttal report are based on the wrong legal standard. There is no indication that Burwell would provide testimony on anything other than his opinions based on the wrong legal standard. His analysis is incompatible with the two-prong objective and subjective standard required to establish a violation of the Eighth Amendment. Because Burwell's entire testimony is based on his misplaced assumption of the law, it will not assist the jury in determining whether the Eighth Amendment was violated.

Even if Burwell were allowed to testify, subparts of his opinion depend on the wrong legal standard and these should be excluded. For example, he repeatedly states or implies that the officers should have used a lesser force. *See* Report p. 7 ("McCowan failed to consider lesser means of force"); p. 26 ("Officer McCowan and Officer Baker failed to consider lesser means of force"); p. 27 (the Officers' "failure to utilize any lesser means of force"). Neither the Fourth nor the Eighth Amendment, however, requires that an officer use a lesser force. *See, e.g., Carswell v. Borough of Homestead*, 381 F.3d 235 (3rd Cir. 2004); *Plakas v. Drinski*, 19 F.3d 1143 (7th Cir. 1994). Burwell should not be allowed to testify or imply that the officers should first have deployed a "lesser force."

For these reasons, the Court should exclude Burwell's testimony in its entirety or, alternatively, exclude him from offering testimony based on the wrong legal standards.

## II.

### Burwell's Statements of the Law Should Be Excluded

As discussed above, Burwell's entire opinion should be excluded because it is based on the wrong legal standard. If he is allowed to testify at all, his opinions concerning the applicable

legal standards should be excluded.

It is well settled that testimony concerning the applicable legal standards is improper and inadmissible. *See Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366-68 (4th Cir.1986); *see also Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996) (observing that '[i]ncorrect statements of the law are no more admissible through 'experts' than are falsifiable scientific theories"). Opinion testimony that "draws a legal conclusion by applying the law to the facts" is inadmissible. *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see also United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (observing that "[t]he best way to determine whether opinion testimony contains legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular") (internal quotation marks and citation omitted). Further, an expert opinion stated in terms of legally specialized terms usurps the jury's obligation to apply the law to the facts. *See Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D. W. Va. 2013) (excluding expert testimony that "products were 'not reasonably safe' or that a defendant 'failed to warn,'" but allowing "a more general expert opinion, using terms that do not have a separate, distinct, and specialized meaning in the law"); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190 (C.D. Cal. 2015) (excluding expert testimony that the defendant's use of force was "excessive" or "unreasonable" but allowing expert's opinions to be explored through hypothetical questioning); *T.B. v. Indep. Sch. Dist. 112*, No. 19cv2414, 2022 U.S. Dist. LEXIS 139821 at *17 (D. Minn. Aug. 4, 2022) (precluding expert from using the phrase "deliberate indifference" at trial because of sufficiently severe risk of juror confusion); *Conely v. City of Lakewood*, No. 6064, 2012 U.S. Dist. LEXIS 175731, at *19 (W.D. Wash. Dec. 11, 2012) (excluding "Mr. Burwell's opinion [that] appears to be legal argument rather than expert analysis. It is not

helpful to the court on this matter.").

In addition to basing his opinions on the Fourth Amendment as discussed above, Burwell peppers his report with statements of the law of the Fourth Amendment. For example, he extensively quotes *Kerr*, 875 F.2d 1546, although, as mentioned above, he puts his own words into the mouth of the Eleventh Circuit. Report pp. 13-14. He quotes the Police Executive Research Forum as stating that "'Federal courts have repeatedly ruled that warnings must be issued and suspects must have the opportunity to surrender before a canine is deployed.'" Report p. 26. Through these types of statements, Burwell impermissibly seeks to testify on the law.

Burwell's opining on the law is not limited to the elements of a claim under the Fourth Amendment. For example, in an opinion likely to confuse the jury, Burwell says that VDOC policies and training "emphasize (incorrectly) that canines are not considered 'deadly force.'" Report p.16. Burwell provides no source for his conclusion that canines are considered a "deadly force." There is none. Circuit courts that have addressed the issue have held that canines are not considered a "deadly force." *See Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated on other grounds by Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007) (holding that use of police dogs could constitute deadly force only where "the unusual circumstances which resulted in the suspect's death were foreseeable" and not "an extreme aberration from the outcome intended or expected"); *see also Becker v. Elfreich*, 821 F.3d 920, 926 (7th Cir. 2016); *Thomson v. Salk Lake County*, 584 F.3d 1304 (10th Cir. 2009); *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 149 (1st Cir. 2003); *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir. 1995); *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988).

Burwell should not be allowed to testify or imply that courts deem dogs a deadly or lethal force. Additionally, any testimony that implies that canines are a lethal force should be

excluded. *See, e.g.,* Report p. 6 ("there are important differences between canines and other types of less lethal use of force options;" "canine bites can cause more severe injuries than other less lethal weapons when used improperly"); p. 10 ("[c]anine bites are serious and can cause more severe injuries than other less lethal weapons when used improperly"); p. 16 ("when other, lesser lethal uses of force are equally available").

For these reasons, the Court should exclude Burwell's testimony on legal standards and testimony that implies that canines are a deadly or lethal force.

III.

Burwell's Testimony That Will Not Assist the Jury Should Be Excluded

Burwell should not be allowed to testify as to witnesses' credibility or to suggest whether a particular party's version of events should be accepted.

A. Burwell's Credibility Determinations of Eyewitnesses Should Be Excluded

Rule 702(a)  requires that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." As a general rule, opinions that make credibility determinations or draw inferences are impermissible because these tasks are for the jury, and not ones for which any expertise is necessary. *See United States v. Dorsey*, 45 F.3d 809, 814-15 (4th Cir.), *cert. denied*, 515 U.S. 1168 (1995) (observing that "the evaluation of a witness's credibility is a determination usually within the jury's exclusive purview"); *see also United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988) (holding that district court did not abuse its discretion in excluding psychiatrist testimony on the credibility of a witness); *Hodge v. Hurley*, 426 F.3d 368, 387 n.26 (6th Cir. 2005) (condemning expert testimony that "essentially allow[ed the complaining witness's] contested testimony—the credibility of which was the key issue in the trial court—to bootstrap

its way to scientific certainty"); *U.S. v. Hall*, 165 F.3d 1095, 1107 (7th Cir. 1999) (noting that "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury—determining the credibility of witnesses"); *Rivera v. Heck*, 16cv673, 2018 U.S. Dist. LEXIS 155294 at *10-11 (W.D. Wisc. Sept. 12, 2018) (precluding Burwell's opinion "based primarily on his attempt to resolve factual disputes regarding what happened during the incident, including offering his own opinions regarding the credibility of witnesses and the parties' states of mind").

Burwell's report repeatedly calls into question the credibility of eyewitnesses. For example, Burwell criticizes Officer McCowan's testimony as "implausible." Report p. 25 ("It seems implausible that an officer running at full speed with a canine managed to give 'multiple warnings;'" "the third warning that Officer McCowan allegedly gave between the two deployments seems implausible"); p. 37 ("it is implausible that Officer McCowan was able to give several consecutive orders given the short time frame"); p. 40 ("it is implausible that Officer Baker was capable of giving 'multiple consecutive orders'"). Burwell characterizes McCowan's and Baker's Canine Bite Reports as "providing false, inaccurate, and self-serving narratives of the incident." Report p.35. He insinuates that eyewitnesses were lying about their perception of Plaintiff Johnson's conduct. Report p. 22 ("[a]lthough Defendants claim that the use of a canine was justified because Mr. Johnson was allegedly acting aggressively towards Officer Mullins, the video evidence never shows Mr. Johnson acting in an assaultive or threatening manner towards any of the Officers"); p. 23 ("Officer McCowan testified that he observed Mr. Johnson approaching Officer Mullins with a closed fist and in a threatening manner. The video does not show Mr. Johnson approaching Officer Mullins at the time Officer McCowan entered the pod and ran towards Mr. Johnson"). In all of these statements, Burwell offers as "expert testimony"

his opinions regarding the credibility of witnesses and the parties' states of mind. As such they should not be admitted.

For these reasons, the Court should exclude Burwell's evaluations of the credibility of eyewitnesses.

B. Burwell's Opinions on Matters that Require No Expertise Should Be Excluded

The Fourth Circuit has "expressly found that in determining whether a particular expert's testimony is sufficiently helpful to the trier of fact to warrant admission into trial, the district court should consider whether the testimony presented is simply reiterating facts already 'within common knowledge of the jurors.'" *Dorsey*, 45 F.3d at 814 (quoting *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993)). Under this standard, exclusion of expert testimony is appropriate where "'jurors using common sense and their faculties of observation' may interpret . . . events within the [presented] video evidence 'without the help of an expert.'" *United States v. Underwood*, No. 2021, U.S. Dist. LEXIS 62542 at *9 (D. Md. Mar. 31, 2021) (quoting *Dorsey*, 45 F.3d at 814)); *see also Cobarrubia v. Edwards*, No. 4:19cv07899, 2021 U.S. Dist. LEXIS 177654 at *19 (N.D. Cal. Sept. 17, 2021) (prohibiting Burwell from testifying "that a crime was not occurring, that Plaintiff was not resisting at any point in time, threatening officers or attempting to evade arrest"). In *Underwood*, the District of Maryland excluded opinions that "'purported to interpret what occurred on the Facebook Live video of the events leading up to [Defendant's] arrest.'" (*Id.* at *8 (quoting Government's argument).

Burwell seeks to testify on matters that are well within the ken of jurors using common sense and their faculties of observation. Jurors can determine for themselves whether Johnson was passive, whether Johnson had the opportunity to comply with the officers' orders, whether the altercation was ongoing, what the dog and each officer was doing, and the timing of the

officers' warnings and other events. The Court should exclude Johnson's testimony on these issues. *See, e.g.,* Report p. 20 ("[t]he video shows Mr. Johnson was only passive and had no chance of complying with Officer McCowan"); p. 24 ("the only thing Mr. Johnson did prior to being bit was to take actions to avoid being bit, he was not attempting to resist or flee;" "[t]he video evidence simply shows that Mr. Johnson tried to avoid being bit by Officer McCowan's canine"); p. 33 ("Mr. Johnson was complying with commands to the best of his ability," the dog was "shaking, tugging and pulling on Mr. Johnson's arm"); p. 22 ("[t]he altercation was over"); p. 24 (same); p. 27 ("the altercation had already ended").[4] The jury can see the video for themselves and interpret these events without the help of an "expert."

Likewise, a jury can interpret for themselves passages of the Canine Bite Reports. Burwell, however, seeks to present his version of the reports as expert testimony. For example, Burwell opines that McCowan and Baker "did not detail in their reports that Guy or Johnson was dangerous." Report p. 36. The jury themselves can read and evaluate the reports. In fact, they may draw a conclusion exactly opposite from Burwell's opinion because McCowan's report states that Johnson "turned toward Officer S. Mullins in what appeared to be an assault on staff." Report p. 36. Baker's report also implies that the officers perceived a high level of danger. Report p. 39 ("a 10-18 (Offender on Offender fight) was called via radio," that Johnson and guy "were involved in a fight," and later Johnson "stopped fighting with offender A. Guy and turned toward Officer S. Mullins"). The jury can also evaluate for themselves whether, as Burwell claims, "Officer McCowan's report appears to mirror image what Officer Baker wrote." Report p. 35. The jury should be allowed to draw their own inferences.

---

[4] Although Burwell's initial references to the end of the altercation refer to the altercation solely between Guy and Johnson, the referent becomes less clear later in the Report.

Additionally, Burwell's testimony regarding people's reactions to dogs and dog bites should be excluded because "jurors using common sense and their faculties of observation" will not be helped by his opinions on how the "average person" responds to dog bites. *See, e.g.,* Report p. 13 ("'the average person will struggle if being seized or confronted by a canine'") (purporting to quote *Kerr*, 875 F.2d at 1550);[5] p. 17 ("'Handlers will continue to factor into their call-off decision that the average person will struggle if being seized or confronted by a canine'") (purporting to quote the Los Angeles and Seattle Police Department's policies); p. 29 (same). At one point, Burwell himself acknowledges that his opinion is no more than a matter of "common sense." Report p. 29 ("as common sense informs us all, when a dog begins biting a person, that person will always writhe and resist the dog as it continues to bite them"). Burwell should not be allowed to dress up common knowledge as an expert opinion. *See, e.g.,* Report p. 11 ("Dog bites are also different in that a person's reaction to seeing a canine and to a canine bite may exacerbate the injuries. Due to the terrifying experience of being attacked by a dog, a person cannot make sound judgment [sic] calls and will mostly try to defend themselves from the attack. The person being attacked by a dog will generally writhe and try to defend themselves from the animal. These are natural reactions and do not constitute resistance.");[6] p. 29 ("[t]he puncture, tearing, cutting of human flesh by a dog's teeth is caused by the natural and involuntary impulse

---

[5] This quotation, in fact, does not come from *Kerr*. As stated above, Burwell inserted a paragraph into his quotation from *Kerr* without stating that it was not part of the *Kerr* decision.

[6] As discussed below, Burwell lacks the expertise in human behavior to make this sweeping statement. This testimony also runs afoul of Federal Rule of Evidence 403, which allows the Court to "exclude relative evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The danger of "unfair prejudice" in the Fourth Circuit is a "genuine risk that the emotions of the jury will be excited to irrational behavior," which must be "disproportionate to the probative value of the offered evidence." *United States v. Mohr*, 318 F.3d 613, 618 (4th Cir. 2003).

of someone being bitten by a dog [which] is to pull the part of their body being bitten away from the dog").

Using their common sense and faculties of observation, a jury may also determine for themselves the relative severity of dog bites compared with the severity of injuries from other uses of force. As the Northern District of California stated when precluding Burwell from testifying on the relative severity of dog-bites compared to other uses of force, "[a] jury can decide for itself the relative severity of police-dog bites." *May v. San Mateo*, No. 16:cv00252, 2017 U.S. Dist. LEXIS 83425 at *22 (N.D. Cal. May 26, 2017). Burwell should not be allowed to testify that "canine bites can cause more severe injuries than other less lethal weapons," "more severe than a Taser," or "more severe than a gunshot wound." Report p. 6. Likewise, the Court should exclude Burwell's opinion and testimony regarding dogs as a use of force relative to other use-of-force tools. Report pp. 9-11.

For these reasons, the Court should exclude Burwell's testimony that makes credibility determinations, draws inferences of fact, construes the video evidence, interprets the officers' reports, opines on the average person's reaction to dogs, dog attacks, or being bitten, or compares the use of canines to other uses of force.

IV.

### Burwell's Testimony on Matters Outside his Expertise Should Be Excluded

Rule 702 requires that a witness have adequate "knowledge, skill, experience, training, or education" to qualify as an expert. In performing its gatekeeping functions, the trial court "must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). Because "[e]xpert evidence can be both powerful and quite

misleading," *Daubert*, 509 U.S. at 595, "the importance of the gatekeeping function cannot be overstated." *Sardis*, 10 F.4th at 283 (internal quotation marks and citations omitted). Although a witness may be qualified in one area of expertise, he may be precluded from offering opinions beyond that area of expertise. *See Kumho Tire*, 526 U.S. at 154-55; *see also Wintz By & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 513 (7th Cir. 1997) (finding that testimony of expert was not helpful to jury because the expert toxicologist was not a licensed physician and lacked expertise in the specific health conditions at issue in the case).

### A. Burwell's Testimony on Human Behavior Should Be Excluded

Burwell is not qualified as an expert in human behavior or the use of canines in prison. His testimony based on people's reaction to seeing a canine and a canine bite is unreliable and should not be submitted to the jury. This is not a close call. As the Eastern District of California recently recognized, Burwell lacks "specialized knowledge in the areas of psychology or human behavioral science that would make his testimony about [a person's] mindset admissible as an expert opinion under Rules 702 and 703." *Figures v. Garcia*, No. 2:15cv894, 2021 U.S. Dist. LEXIS 141187, at *4 (E.D. Cal. July 28, 2021) (precluding Burwell from testifying on plaintiff's mindset). Further, Burwell has no expertise in prisoners' responses to dogs. He has no experience using dogs in the carceral setting at all except for "maybe a search dog for narcotics." (Tr. 12:23-13:3). He never trained dogs for use in a jail or prison. (Tr. 16:3-12).

As stated above, Burwell's opinions on human reaction to dogs, dog attacks, or being bitten should be excluded because they will not assist the trier of fact. To the extent that the Court deems any of Burwell's opinions on human behavior as a subject for expert testimony, they should nonetheless be excluded because he lacks expertise in human behavior or handling

dogs in the carceral setting.[7]  Moreover, Burwell's opinions on the use of canines by police

departments, searching and seizing free citizens, or searching for narcotics should be excluded

for the additional reason that their "probative value is substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid. 403.

For these reasons, the Court should preclude Burwell from testifying on human reactions

to dogs, dog attacks, or being bitten.

B.  Burwell's Testimony on McCowan's Mindset Should Be Excluded

Because Burwell has no specialized knowledge in the areas of psychology or human

behavioral science, he should not be allowed to testify on the mindset of Plaintiff or any other

party.  *See, e.g.,* Report pp.22-23 ("Officer McCowan had no real basis to feel that the inmates

were in danger.  He decided to engage his canine because he felt that Mr. Johnson was a threat

but could not articulate who was in danger or why they were in danger.").  Additionally, Burwell

should be precluded from opining on McCowan's mindset through general statements that

impute that McCowan did not perceive Johnson as a threat.  *See, e.g.,* Report p. 22 ("The use of

canines [sic] as a means of force on Mr. Johnson was unreasonable because Mr. Johnson was not

an immediate threat to the safety of any of the officers or other inmates in A-1 Pod.").

For these reasons, the Court should preclude Burwell from testifying on the mindset of

McCowan, Plaintiff or any of the other parties.

C.  Burwell's Opinions on Medicine Should Be Excluded

Additionally, Burwell has no specialized knowledge, skill, experience, training, or

education that would assist the jury in understanding medical issues.  His opinions in this area

---

[7] Burwell, in fact, testified that he was surprised by Plaintiff Johnson's reaction to being bit.  He stated that "the video doesn't show that Mr. Johnson was flailing like I would expect him to being bit."  (Tr. 113:15-17).

are based on what doctors have told him. For example, following his opinion that tetanus "can develop from the bacteria" in a dog's mouth, he states: "Doctors state that some of the symptoms related to tetanus are" followed by a list of over ten "symptoms," including death. (Report pp. 10-11). He states that he has "listened to a medical doctor testify in the *May v. San Mateo* trial in the Northern District of California." Report p. 11, n.4. Given his lack of medical expertise, he should not be allowed to testify as to the medical seriousness or injuries from dog bites. *See, e.g.,* Report pp. 10-11).[8] Additionally, Burwell's testimony on what he has heard others say is hearsay, inadmissible under Rule 802. He should not be allowed to serve as a mouthpiece to others. Further, Burwell's testimony that Johnson's injuries "are clearly a result of a lengthy dog bite" should be precluded because this is a factual question that the jury should determine based on the evidence. Report p. 32.

For these reasons, Burwell should be precluded from giving medical opinions.

V.

Burwell's Testimony on the "Handler Control Method"
and the Use of Force Against Guy Should Be Excluded as Not Relevant

As discussed above, "if an opinion is not relevant to a fact at issue, *Daubert* requires that it be excluded." *Sardis*, 10 F.4th at 281.

A. Burwell's Testimony Regarding the "Handler Control Method" Is Irrelevant

The "Handler Control Method," according to Burwell, "is the method used for attack-trained police dogs." Report p. 11 (capitalization from heading omitted). It is used for searching for a suspect. Report p. 12; Tr. 50:21-22 ("[t]his is written for searches"). During Handler

---

[8] Although Burwell has experienced a dog bite, it is Plaintiff's injury that is relevant, not Burwell's. Burwell should not be allowed to shoehorn in medical expert opinions on the basis of his personal experiences when he is not qualified to testify as a medical expert.

Control training, "the police service dog is trained to apprehend a suspect by biting." Report p.12. The use of a canine for searches is not at issue here, and McCowan's dog was not a "police service dog." Because Burwell's testimony regarding the "Handler Control Method" is irrelevant, it and Burwell's opinions based on it should be excluded.

    B. Burwell's Testimony Regarding Use of Force Against Guy Is Irrelevant

Burwell's testimony regarding Officer Baker's use of his dog ET or the use of force against Guy should be excluded as not relevant.[9] Plaintiff has not alleged that Baker deployed ET on him, and he has not alleged that Baker's deployment of ET constituted excessive force. In fact, Plaintiff Johnson, who was not injured by ET, would not have standing to challenge ET's deployment.

For these reasons, the Court should exclude Burwell from testifying on the "Handler Control Method" or Officer Baker's deployment of his dog ET.

VI.

Burwell's Testimony on Johnson's Bite Marks Should Be Excluded

"An expert's opinion should be excluded when it is based on assumptions that are speculative and are not supported by the record." *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994).

Burwell's expected testimony on Mr. Johnson's injuries is based on assumptions that are speculative and not supported by the record. His opinion is derived from his examination of the video and photographs. (Tr. 113:6-13; Report pp. 31-32). If he looked at the medical records, he did so only cursorily. (Tr. 119:9-13). He did not examine Plaintiff Johnson's bites firsthand. He did not examine the dog Shadow or know the spacing of his teeth. Instead, Burwell grounded his

_____
[9] Officer Baker was identified as John Doe 1 in the Amended Complaint.

findings on the assumption that "[t]he average police canine[']s upper canine teeth are spaced about two inches apart while the lower canine teeth are spaced about one and three quarter inches apart." Report p. 32.

Burwell himself admits that it is "nearly impossible" to scientifically examine bite marks because "each dog is somewhat different" and "no two dogs [are] identical." (Tr. 112:15-18). Accordingly, he has to resort to using " a standard canine skull" and there, "only for demonstrative purposes." (Tr. 112:20-21). Burwell admits that he could not always tell from the photos whether he was looking at bites from the top or lower canine teeth. (Tr. 115:13-18).

Nonetheless, Burwell opines that there were two separate bites on Johnson's arm and that the injuries were "clearly a result of a lengthy dog bite." Report p. 32. As Burwell's report states, this opinion is based on the average spacing of police dog teeth and "the spacing between [Johnson's] wounds" derived from the photos or videos. Although Burwell is applying his experience "as a canine handler and trainer who has personally seen the results of extended dog bites," (Report p. 32), in this case he is applying that experience to assumptions that are speculative and not supported by the record.

For these reasons, the Court should preclude Burwell from opining on the bite marks and specifically preclude him from testifying that there were two separate bites on Johnson's arm or that Johnson's injuries were the result of a lengthy dog bite.

<u>Conclusion</u>

For these reasons, the Court should exclude the testimony of Ernest Burwell.

Respectfully submitted,

K-9 OFFICER MCCOWAN, K-9 OFFICER E.
BAKER, C/O S. DEAN, C/O P. CARROLL,
JEFFREY KISER, K-9 SERGEANT J. STANLEY,
HAROLD W. CLARKE, MAJOR WILLIAM J.
BARBETTO, and A. DAVID ROBINSON

By: _____/s/ Timothy E. Davis_____
Timothy E. Davis, AAG, VSB #87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-4226
(804) 786-4239 (Fax)
Email: tdavis@oag.state.va.us

_____/s/    Richard C. Vorhis_____
Richard C. Vorhis, SAAG, VSB #23170
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 786-4805
(804) 786-4239 (Fax)
E-mail: rvorhis@oag.state.va.us

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record for the Plaintiff.

                                     /s/ Timothy E. Davis
                                Timothy E. Davis, AAG, VSB#87448
Office of the Attorney General
Criminal Justice & Public Safety Division
202 North 9th Street
Richmond, Virginia 23219
(804) 225-4226
(804) 786-4239 (Fax)
Email: tdavis@oag.state.va.us