IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| COREY E. JOHNSON, <br> Plaintiff, <br><br> v. <br><br> (K-9) OFFICER MCCOWAN et al., <br> Defendants. | Civil Action No. 7:20-cv-00582 <br><br> By: Michael F. Urbanski <br> Chief U.S. District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendants Officers McCowan, Baker, Dean, and Carroll's motion for summary judgment ("Officer Defendants"), ECF No. 94, and defendants Kiser, Stanley, Clarke, Robinson, and Barbetto's motion for summary judgment ("Supervisory Defendants"), ECF No. 96, under Rule 56(a) of the Federal Rules of Civil Procedure. For the reasons discussed below, the court will **GRANT** in part and **DENY** in part the Officer Defendants' motion for summary judgment and will **GRANT** the Supervisory Defendants' motion for summary judgment.

## I. Background

The facts of this case arise from an incident occurring at Red Onion State Prison ("ROSP") on May 2, 2020. Am. Compl. ¶ 1, ECF No. 19. Plaintiff Corey Johnson, an inmate at ROSP, was housed in the bottom tier of the A-1 Pod. Pl. Opp. Sum. J., ECF No. 117, at 2. At approximately 6:00 pm, Johnson was released from his cell along with the other inmates on his tier. Id. at 4. Johnson was waiting near the telephone with another inmate, Arthur Guy.

1

Id. He and Guy began to argue, and the argument escalated to a physical fight in which both inmates threw punches. Id. They fell to the floor, still struggling, with Johnson on top of Guy. Video at 00:30; Pl. Opp. Sum. J., ECF No. 117, at 4. The other prisoners lay on the floor. Video at 00:30-00:47. Officer Mullins used a short burst of OC spray on Guy and Johnson, which was ineffective, and Guy and Johnson continued fighting. Pl. Opp. Sum. J., ECF No. 117, at 5. At that point, K-9 Officer Baker entered the pod with his Patrol Canine, "ET," and deployed ET on Guy within four seconds of his entry. Id. at 5-6. The dog bit Guy for about ten seconds. Id. at 6. Johnson then moved backwards away from Guy and Officer Mullins. Id. K-9 Officer McCowan then entered the pod with his dog, "Shadow," and deployed Shadow onto Johnson within two or three seconds of entering. Video at 01:00; Pl. Opp. Sum. J., ECF No. 117, at 6. McCowan ordered Shadow to bite Johnson, and Shadow missed. Video at 01:11-14; Pl. Opp. Sum. J., ECF No. 117, at 7; Defs. Mot. Sum. J., ECF No. 95, at 7. Two seconds after the missed attempt, McCowan engaged Shadow again, at which point Shadow bit Johnson above his right wrist. Pl. Opp. Sum. J., ECF No. 117, at 7; Defs. Mot. Sum. J., ECF No. 95, at 7. Johnson then fell to the ground with Shadow still engaged. Pl. Opp. Sum. J., ECF No. 117, at 7. Once on the ground, Shadow continued to bite Johnson for 27 seconds before disengaging. Video at 01:16-44.

At the time of the events in question, there were three additional officers present in the pod—defendants Baker, Dean, and Carroll. Pl. Opp. Sum. J., ECF No. 117, at 10. Officer Baker was on the pod floor and Officers Dean and Carroll were in the control booths on the second tier. It is undisputed that none of the three officers intervened. Video at 01:11-44.

As a result of the dog bite, Johnson had three lacerations on his right wrist and several puncture sites, which were cleaned and treated by prison medical officials. Medical Report, ECF No. 117-24, at 1. He was then sent to the emergency room for repair of the lacerations. Id. Johnson reports that his wound later became swollen and discolored and that he was required to take penicillin and pain medication for an infection. Johnson Tr., ECF No. 117-16, at 60:16-25, 61:1-13. He also states that he is still experiencing numbness in his hand from the bite injuries. Id. at 54:16-17.

Johnson brought suit under 42 U.S.C. § 1983 and Virginia tort law arising from the use of force by defendant McCowan. Following the court's partial grant of defendants' motion to dismiss, ECF No. 55, the following claims remain: an Eighth Amendment claim of excessive force and Virginia tort law claims of assault, battery, and intentional infliction of emotional distress against Officer McCowan (Counts I and VI); Eighth Amendment claims against Officers Baker, Dean, and Carroll for deliberate indifference and bystander liability (Counts II and III); an Eighth Amendment claim for failure to train, supervise, or discipline against defendants Kiser, Stanley, Clarke, Robinson, and Barbetto ("supervisory defendants") (Count IV); and an Eighth Amendment claim for failure to promulgate or enforce adequate policies concerning the use of canines against defendants Clarke, Robinson, and Barbetto (Count V). Am. Compl., ECF No. 19. All defendants moved for summary judgment. ECF Nos. 94 & 96.

## II. Legal Standard

Pursuant to Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);

Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477

4

U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 124 (4th Cir. 1990)). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

### III. Claims Against Defendant McCowan (Counts I and VI)

#### A. Count I—Excessive Force

Defendants seek summary judgment on the excessive force claim against McCowan, alleging that there is no genuine dispute of material fact regarding McCowan's use of force and that the facts do not rise to the level of excessive force. Defs. Mot. Sum. J., ECF No. 95, at 11-16.

Johnson argues that McCowan's use of force constituted excessive force in violation of his Eighth Amendment rights. The legal principles governing excessive force are well settled. An Eighth Amendment claim involves an objective and subjective component. Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019). The objective component "asks whether the force applied was sufficiently serious to establish a cause of action," which requires "only something more than 'de minimis' force." Id. (citing Hudson v. McMillian, 503 U.S. 1, 10

5

(1992)); see Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam) (holding that "nontrivial force" is sufficient to satisfy the objective component)). The subjective component asks whether an officer "acted with a sufficiently culpable state of mind." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Sufficiently capable state of mind is demonstrated with evidence of "wantonness in the infliction of pain," Whitley v. Albers, 475 U.S. 312, 327 (1986). Whether wantonness can be established "turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21 (citation omitted). The factors considered in making this determination include "1) the need for application of force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived by the responsible officials, and 4) any efforts made to temper the severity of a forceful response." Williams, 77 F.3d at 762 (internal quotation marks removed). The subjective component can be demonstrated through direct evidence of intent or through circumstantial evidence of the officer's subjective state of mind. Brooks, 924 F.3d at 116 (citing Hope v. Pelzer, 536 U.S. 730, 738 (2002)).

Disputes of material facts preclude summary judgment for the excessive force claim against McCowan. Defendants allege that when McCowan entered the pod with Shadow, he gave Johnson verbal orders to get on the ground as he entered the room and that Johnson failed to comply. Def. Mot. Sum. J., ECF No. 95, at 6-7. They state that McCowan engaged his canine because Johnson was approaching Mullins in a "threatening manner" with his "fists clenched and his body in a combative posture." Id. at 6. McCowan alleges that he continued to engage Shadow on Johnson's arm because Johnson, while lying on the ground, refused to

comply with McCowan's verbal orders to show his other hand and confirm that he did not have a weapon. Id. at 7.

Plaintiff denies that he was approaching Mullins at all when McCowan entered the pod and that he was maintaining a threatening stance. Johnson Tr. 53:7-22. Instead, he argues that the video evidence shows him moving away from Mullins when McCowan entered the pod. Pl. Opp. Sum. J., ECF No. 117, at 7; Video 01:11-01:14. He also denies hearing any verbal orders from McCowan, and that even if he had heard any orders, he would not have had time to comply before McCowan engaged his dog. Pl. Opp. Sum. J., ECF No. 117, at 7; Video 01:11-01:14. He presents evidence that he neither had a weapon nor did McCowan or any other officer believe that he did. See Pl. Opp. Sum. J., ECF No. 117, at 9; Canine Bite Rep., ECF No. 117-23, at 1-2; McCowan Tr., ECF No. 117-14, at 178:19-22, 179:1-4. After viewing the evidence in the light most favorable to the plaintiff, the court concludes that there is a genuine issue of material fact as to the objective and subjective components of the excessive force analysis. A reasonable trier of fact could find that Johnson was not threatening Mullins, posing a risk to the safety of other inmates, nor refusing to comply with McCowan's orders, and there was therefore no need for the level of force used. Disputes of material fact require resolution by trial. Accordingly, defendants' motion for summary judgment on Count I is **DENIED**.

### B. Count VI—Assault, Battery, and Intentional Infliction of Emotional Distress

Plaintiff alleges assault and battery against defendant McCowan, both of which are governed by Virginia state law. See Gray-Hopkins v. Prince George's Cnty., 309 F.3d 224, 232

7

(4th Cir. 2002). Under Virginia law, battery is "an unwanted touching which is neither consented to, excused, nor justified." Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009) (quoting Koffman v. Garnett, 265 Va. 12, 574 S.E.2d 258, 261 (2003)). Assault consists of "an act intended to cause harmful or offensive contact with another person or apprehension of such contact . . . that creates in that other person's mind a reasonable apprehension of an imminent battery." Koffman, 265 Va. at 16. "[A] legal justification for the act being complained of will defeat an assault or battery claim." Unus, 565 F.3d at 117; see id. ("Virginia recognizes that [law enforcement] are legally justified in using reasonable force to execute their lawful duties."). For plaintiff to prevail on the assault and battery claims, he must demonstrate that McCowan carried out a "'wrongful act; that is, that the law enforcement officer's conduct lacked justification or excuse.'" Bell v. Johnson, No. 7:09-cv-214, 2011 WL 1226003, at *12 (W.D. Va. March 30, 2011) (quoting McLenagan v. Karnes, 27 F.3d 1002, 1009 (4th Cir. 1994)).

Defendants argue that the assault and battery claims fail because McCowan's use of force was justified under the circumstances. Def. Mot. Sum. J., ECF No. 95, at 16. As described supra, there is a dispute of material fact concerning whether McCowan's use of force was justified. Because plaintiff's assault and battery claims involve largely the same questions of fact, defendants' motion for summary judgment as to the assault and battery claims is **DENIED.**

Johnson also alleges intentional infliction of emotional distress (IIED) against McCowan. A plaintiff can only recover on an IIED claim if he can show "by clear and convincing evidence" that "'1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the

wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.'" Supervalu, Inc. v. Johnson, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008) (citing Almy v. Grisham, 273 Va. 68, 77, 639 S.E.2d 182, 186 (2007)). Liability occurs "only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." Russo v. White, 241 Va. 23, 27, 400 S.E.2d 160, 163 (1991).

Defendants argue that they are entitled to summary judgment on this claim because McCowan's conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," Def. Mot. Sum. J., ECF No. 95, at 18 (quoting Russo, 241 Va. at 27), even if all of Johnson's allegations are taken as true. They also argue that Johnson has not produced evidence that he has suffered severe emotional distress as a result of the incident. Id.

The court finds that Johnson has not created a factual dispute about severe emotional harm sufficient to survive a summary judgment motion. While Johnson may very well have suffered emotional distress during and after McCowan's use of force, he does not present evidence to support his statement that McCowan "caused severe emotional distress." Am. Compl. ¶ 137. See Kovari v. Brevard Extraditions, LLC, 461 F. Supp. 3d 353, 389 (W.D. Va. 2020) (granting summary judgment on IIED claim because "[Plaintiff] d[id] not present any evidence to support his averments of difficulty sleeping, extreme anxiety, and persisting emotional trauma beyond his own testimony"); Russo, 241 Va. at 28 (finding plaintiff's complaints that "she was nervous, could not sleep, experienced stress and 'its physical

9

symptoms,' withdrew from activities, and was unable to concentrate at work" to be insufficiently severe). Indeed, Johnson did not seek mental health treatment as a result of the use of force. See Kovari, 461 F. Supp. 3d at 390 ("[Plaintiff] has not provided evidence corroborating emotional harm, beyond his conclusory testimony, and indeed has not sought medical help for his alleged mental health issues."). Accordingly, defendants' motion for summary judgment on the IIED claim is **GRANTED**.

### IV. Claims Against Defendants Baker, Carroll, and Dean (Counts II and III)

#### A. Count II—Deliberate Indifference

Defendants seek summary judgment on the deliberate indifference claim alleging that Johnson cannot demonstrate a genuine dispute of material fact as to whether Baker, Dean, or Carroll had either knowledge of any excessive force used against Johnson or had reasonable chance to intervene. Defs. Mot. Sum. J., ECF No. 95, at 20. "The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance." Thompson v. Commonwealth, 878 F.3d 89, 97 (4th Cir 2017) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994) and Wilson v. Seiter, 501 U.S. 294, 303 (1991)). To prevail on a deliberate indifference claim, an inmate must demonstrate that 1) he was exposed to "a substantial risk of serious harm," and 2) that the prison official knew of and disregarded that substantial risk. Id. at 97-98 (citing Farmer, 511 U.S. at 834, 837-38).

10

First, there are sufficient facts for a reasonable jury to conclude that Johnson was exposed to a "substantial risk of serious harm." It is undisputed that Johnson suffered a 27-second dog bite that resulted in several injuries including puncture wounds and lacerations, and he reports lasting numbness due to his injuries. See Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 723 (4th Cir. 2010) (explaining that uncontested "significant physical injuries" satisfied the first prong of the deliberate indifference standard).

Defendants argue that Johnson cannot satisfy the second prong. Specifically, they argue that they did not observe McCowan using excessive force against Johnson, nor did they have a reasonable opportunity to intervene. Defs. Mot. Sum. J., ECF No. 95, at 20. However, the court finds that a genuine issue of material fact exists as to this element. "Although this element is subjective, a deliberately indifferent state of mind can be proven through 'inference from circumstantial evidence.'" Thompson, 878 F.3d at 108 (quoting Farmer, 511 U.S. at 842). Defendants claim that Officer Baker's view was partially obstructed by tables and that he did not see the full incident because he was looking at Guy, his own K-9, and other inmates. They also argue that Dean and Carroll did not see the use of force because they were monitoring the other inmates and the pod entrance. However, Johnson has presented evidence sufficient to create a factual dispute as to their actual knowledge. He points to Baker's testimony that indicates he saw the dog engage while Johnson was lying on the floor and to Dean and Carroll's testimony that they had a full view of the pod from their position in the control booth. Baker Tr. at 262:1-5, ECF No. 117-15; Dean Aff. ¶ 6, ECF No. 95-7; Carroll Aff. ¶ 6, ECF No. 95-8. A jury could reasonably infer from this evidence that they were aware of the excessive use of force.

11

Defendants next argue that even if Baker, Dean, and Carroll did see the excessive force, they did not have the ability to intervene. They argue that Baker could not have meaningfully intervened because he was responsible for securing his K-9 and Guy, while Dean and Carroll were responsible for monitoring the other inmates in the pod and the entrance to the pod. Defs. Mot. Sum. J., ECF No. 95, at 20. However, Johnson points out that all three officers could have verbally intervened either by shouting to McCowan or speaking over their radios and instructed him to release Johnson. Pl. Opp. Sum. J., ECF No. 117, at 26. Johnson has presented sufficient evidence to indicate this sort of intervention was possible—the video evidence shows that all other inmates were lying on the ground during the incident and that no other staff entered or exited through the pod door. Video 01:11-44. Additionally, Baker himself stated that he knew to intervene by "let[ting] [the officer] know that [he] was over the limit of what [amount of force] was required" by saying "[t]hat's enough" or "[t]hat's overboard" if he witnessed excessive force. Baker Tr. 125:21-22, 126:1-12, ECF No. 117-15. A reasonable jury could find that this complete failure to intervene amounts to deliberate indifference. See Raynor v. Pugh, 817 F.3d 123, 128 (4th Cir. 2016) ("[A] correctional officer who stands by as a passive observer and takes no action whatsoever to intervene during an assault violates the [Eighth Amendment] rights of a victim inmate." (quoting Odom v. S.C. Dep't of Corrs., 349 F.3d 765, 773 (4th Cir. 2003))); id. ("'[C]ompletely failing to take any action' to stop an ongoing assault on a prisoner can amount to deliberate indifference." (quoting Winfield v. Bass, 106 F.3d 525, 532 (4th Cir. 1997))); Brown, 612 F.3d at 723 (holding that a reasonable jury could find deliberate indifference if an officer "know[s] the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily, yet they fail

12

to do so"); Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994) ("A prison official acts with deliberate indifference to an inmate's safety when the official is present at the time of an assault and fails to intervene or otherwise act to end the assault."). The court finds that a reasonable jury could find Baker, Dean, and Carroll acted with deliberate indifference and accordingly **DENIES** summary judgment on this count.

### B. Count III—Bystander Liability

Defendants also seek summary judgment on Johnson's bystander liability claim against Baker, Carroll, and Dean. Defs. Mot. Sum. J., ECF No. 95, at 19-21. Bystander liability is "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002). "[I]f a bystanding officer (1) is confronted with a fellow officer's illegal act, (2) possessed the power to prevent it, and (3) chooses not to act, he may be deemed an accomplice and treated accordingly." Id. In this case, the bystander liability analysis largely resembles the deliberate indifference analysis. First, a reasonable jury could find that Baker, Dean, and Carroll were aware that McCowan was using excessive force against Johnson based on their position in the pod and their training in excessive force interventions. See Part IV.A; Baker Tr. 262:1-12, ECF No. 117-15; Dean Aff. ¶ 4, ECF No. 95-7; Carroll Aff. ¶ 4, ECF No. 95-8. Second, a genuine issue of material fact exists as to whether the officers "possessed the power to prevent" the excessive force. See Part IV.A. Third, it is undisputed that the officers did not intervene, verbally or otherwise. The court finds that a reasonable jury could find Baker, Dean, and Carroll liable under the bystander liability standard and accordingly **DENIES** summary judgment on this count.

13

### V. Claims Against Defendants Supervisory Defendants (Counts IV and V)

Plaintiff has brought an Eighth Amendment failure to train, supervise, or discipline claim against the Supervisory Defendants Jeffrey Kiser, K-9 Sergeant J. Stanley, Harold Clarke, David Robinson, and William Barbetto, and an Eighth Amendment claim for failure to promulgate or enforce adequate policies regarding the use canines against defendants Clarke, Robinson, and Barbetto. Am. Compl. ¶ 104-132, ECF No. 19. Plaintiff brings both claims under a theory of supervisory liability. Id. In the supervisory defendants' motion for summary judgment on both counts, they argue that they are not liabilie under any theory of supervisory liability and that they are entitled to qualified immunity. Pl. Mot. Sum. J., ECF No. 97. Johnson argues in response that there are disputes of material fact concerning the supervisory defendants' constructive knowledge of unconstitutional canine engagements that support their supervisory liability claim. Pl. Opp. Sum. J., ECF No. 119.

At the time of the events in question, the supervisory defendants' positions at VDOC were as follows:

1. Jeffrey Kiser was the Warden at ROSP. Am. Compl. ¶ 10, ECF No. 19; Answer ¶ 10, ECF No. 57.

2. K-9 Sergeant J. Stanley was a K-9 Sergeant at ROSP. Am. Compl. ¶ 11, ECF No. 19; Answer ¶ 11, ECF No. 57.

3. Harold Clarke was the Director of VDOC and is still currently in the position. Am. Compl. ¶ 13, ECF No. 19; Answer ¶ 13, ECF No. 57.

14

4. A. David Robinson was the Chief of Corrections Operations ("CCO") and is still currently in the position. Am. Compl. ¶ 14, ECF No. 19; Answer ¶ 14, ECF No. 57.

5. William Barbetto was the Statewide Canine Coordinator for VDOC. Am. Compl. ¶ 15, ECF No. 19; Answer ¶ 15, ECF No. 57. He is now in another position at VDOC. Am. Compl. ¶ 15, ECF No. 19; Answer ¶ 15, ECF No. 57.

### A. Supervisory Liability

It is a "firmly entrenched" principle that supervisory officials may be held liable for constitutional injuries caused by their subordinates. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984) (cert. denied, 470 U.S. 1035 (1985)). Supervisory liability is based on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (quoting Slakan, 737 F.2d at 372-73). Liability is determined by identifying the persons in the "decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked," Slakan, 737 F.3d at 373, and is "ordinarily one of fact, not law," Shaw, 13 F.3d at 799 (citing Avery v. Cnty. of Burke, 660 F.2d 111, 114 (4th Cir. 1981)).

There are three necessary elements to establish supervisory liability under § 1983: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that

15

there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Id. at 799 (internal quotation marks omitted); see also Slakan, 737 F.2d at 372-74 (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To satisfy the first element, a plaintiff must demonstrate that "the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal quotation marks and citation omitted); see also Slakan, 737 F.2d at 373 (noting that a plaintiff "cannot satisfy his burden of proof by pointing to a single incident or isolated incidents"). As to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Wilkins, 751 F.3d at 226 (internal quotation marks and citation omitted). With respect to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." Shaw, 13 F.3d at 799 (internal quotation marks and citations omitted).

### B. Qualified Immunity

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a government official is protected by qualified immunity, the court considers (1) whether the plaintiff has plausibly alleged a violation of a statutory or

constitutional right, and (2) whether the right was clearly established at the time of the conduct in question. See Pearson v. Callahan, 555 U.S. 223, 231 (2009). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Peltzer, 536 U.S. 730, 739 (2002). The court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### C. Failure to Train, Supervise, or Discipline (Count IV)

Johnson alleges that each of the supervisory defendants is liable for failure to train, supervise, or discipline because their of inactions in response to their "subordinates' widespread, abusive conduct of using canines to attack prisoners and had such knowledge" at the time of McCowan's use of force. Am. Compl. ¶ 112. As evidence of "widespread" and "pervasive" unconstitutional conduct, Johnson points to four incidents of excessive force by other canine handlers that occurred before the events in question, several incidents that occurred after, and a high frequency of bites. Pl. Opp. Sum. J., ECF No. 119, at 18. He alleges that the supervisory defendants failed to respond because they did not change confusing language in the use of force policy, clarify where canine use falls on the use-of-force continuum, make substantive changes to the VDOC policies regarding canines, nor have a party outside VDOC review the policies. Id. at 19-20. This, he alleges, was an affirmative cause of McCowan's use of excessive force against Johnson. Id. at 21.

Construing all the facts and drawing reasonable inferences in Johnson's favor, the court finds that the supervisory defendants are entitled to qualified immunity because the evidence

17

Johnson claims should have put them on notice that they needed to supervise McCowan more closely is insufficient to find them liable under clearly established law. Johnson has not pointed to any case law that clearly establishes the requirements for training policies regarding canine-use and instead points to Shaw and Slakan. Both of those cases are distinct from the case at bench. In Shaw, the court denied qualified immunity to a supervisor who had "ignored the complaints of at least three witnesses who alleged that [his supervisee] had beaten them during an arrest" and "laugh[ed] at and ignor[ed] complaints of excessive force perpetrated by an officer he supervised." 13 F.3d at 797, 802. The court reasoned that a "reasonable person in [the supervisor's] position would unquestionably believe that his conduct violated clearly established law regarding the contours of supervisory liability." Id. at 802. Slakan involved correctional officers throwing a cup of coffee onto an inmate, spraying a water hose into his cell aimed at his head and neck, using tear gas, and beating him with a billy club until he lost consciousness. 737 F.3d at 371. The court denied qualified immunity to the supervisors who admitted "that on one occasion [] had personally approved of the use of a high-pressure hose against an inmate who was handcuffed and confined in a cell by himself," who actively opposed tighter controls on the use of high-pressure hoses, who knew of certain risks from the practice of high-pressure hoses "yet testified that he never attempted to discover the magnitude of the risks," and who were aware of seven recent cases involving similar conduct. Id. at 371, 374-76. The court concluded that the officers were not entitled to qualified immunity because they "had explicit legal guideposts to follow" and be on notice that this constituted excessive force. Id. at 376-77.

18

Unlike in Shaw and Slakan, the supervisory defendants in this case did not have "explicit legal guideposts" indicating that the existing training and policies were so constitutionally deficient that they should have anticipated McCowan's use of force. Johnson has not identified cases where supervisors acting under similar circumstances have violated the Eighth Amendment. See White v. Pauly, 137 S. Ct. 548, 552 (2017) (reiterating the "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'" (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)); id. at 79-80 ("[E]xcessive-force principles at only a general level . . . 'are not inherently incapable of giving fair and clear warning' . . . but 'in the light of pre-existing law the unlawfulness must be apparent.'" (quoting United States v. Lanier, 520 U.S. 259, 271 (1997) and Anderson v. Creighton, 483 U.S. 635, 640 (1987)). For this reason, the court **GRANTS** summary judgment as to Count IV.

### D. Failure to Promulgate and Enforce Adequate Policies (Count V)

The court finds the same to be true for Johnson's claim of failure to promulgate or enforce adequate policies (Count V). He alleges that defendants Clarke, Robinson, and Barbetto are subject to supervisory liability because the policies are deficient due to the following shortcomings:

> (1) the VDOC canine policy relies upon standards established outside a correctional setting; (2) VDOC training and operating procedures do not address what a person will do when confronted by a dog or when bit by a dog; (3) VDOC policies and training materials do not consistently treat canines as a use of force, and instead emphasize (incorrectly) that canines are not considered "deadly force"; (4) the VDOC use of force policy does not specifically discuss deployment of canines; (5) there is no requirement that a canine officer use other means of force or confirm that other means of force have been used prior to deploying a canine; and (6) the policies permit an officer to immediately deploy a canine when someone doesn't follow orders, even when other, lesser lethal uses of force are equally available.

Pl. Opp. Sum. J., ECF No. 119, at 27-28 (citations omitted). Even accepting each of these statements as true, Johnson has pointed to no case law that would have put defendants on clear notice that policies were constitutionally deficient. The cases that Johnson relies on do not go to any of these alleged issues with the VDOC policy. See Campbell v. City of Springboro, 700 F.3d 779, 790 (6th Cir. 2012) (supervisor denied qualified immunity for allowing dog in the field after his training had lapsed and failing to implement any kind of K-9 unit policy); Watkins v. City of Oakland, 145 F.3d 1087, 1093-94 (9th Cir. 1998) (supervisor denied qualified immunity for signing an internal affairs report dismissing complaints about an officer with a history of dog bite incidents); Catellani v. Atlantic City, Civil No. 13-5848, 2017 WL 3112820, at *23 (D. N.J. July 21, 2017) (Monell claim involving a K-9 policy "without clear guidelines regarding felony/misdemeanor distinctions or active/passive resistance distinctions exhibited by suspects"). Qualified immunity is appropriate here because there is no established law that is "particularized" to the facts of this case. Anderson, 483 U.S. at 640. For this reason, the court **GRANTS** summary judgment as to Count V.

It is **SO ORDERED.**

Entered: January 23, 2023

/s/ Michael F. Urbanski
Digitally signed by Michael F. Urbanski Chief U.S. District Judge
Date: 2023.01.23 16:37:25 -05'00'

Michael F. Urbanski
Chief United States District Judge